## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JULIE D. GLOBUS, CUSTODIAN FOR TAL
M. GLOBUS,

        Plaintiff,

v.

ARTHUR W. COVIELLO, JR., CHARLES R.
STUCKEY, JR., JOHN ADAMS, JOHN F.
KENNEDY, SCOTT T. SCHNELL, JOSEPH
UNIEJEWSKI, GLORIA C. LARSON, JOSEPH
B. LASSITER III, RICHARD A. DEMILLO,
RICHARD L. EARNEST, WILLIAM H.
HARRIS, JR., ORSON G. SWINDLE III,
ROBERT P. BADAVAS, JAMES K. SIMS,
TAHER ELGAMAL,

        Defendants,
and

RSA SECURITY INC.,

        Nominal Defendant.

Civil Action No.

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by and through her attorneys, derivatively on behalf of RSA Security Inc. ("RSA Security" or the "Company"), alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through her attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available documents regarding RSA Security as follows:

### NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of Nominal Defendant RSA Security against its Board of Directors, including its Chief Executive Officer and acting

Chief Financial Officer, Arthur W. Coviello, Jr., and Chairman Emeritus of RSA Security, Charles R. Stuckey, Jr., and former employees John Adams, Ph.D., John F. Kennedy, Scott T. Schnell, Joseph Uniejewski (collectively, "Defendants"), by Plaintiff Julie D. Globus, Custodian for Tal M. Globus ("Plaintiff") who is now a shareholder of RSA Security, and has been a shareholder during the relevant time period.

2.    Plaintiff, derivatively on behalf of RSA Security, seeks relief for the damages sustained, and to be sustained by RSA Security, as a result of Defendants' violations of state and federal law, including their breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), which occurred between October 13, 1999 and the present (the "Relevant Period").

3.    This action seeks redress for Director Defendants' collective and individual breaches of their fiduciary duties of loyalty, good faith, candor, due care, and their knowing, reckless and/or grossly negligent conduct in, *inter alia*, (i) failing to discover and/or prevent the improper manipulation of employee stock options; (ii) failing to discover and/or prevent the public misreporting of earnings caused by the manipulation of employee stock options, including its effect on stock option expenses and tax liabilities; (iii) failing to properly implement, oversee and maintain appropriate and adequate accounting and internal controls, practices and procedures, namely concerning the administration of the Company's stock-based compensation plan; (iv) failing to ensure that RSA Security operated in compliance with all applicable federal and state laws, rules, and regulations requiring the dissemination of accurate financial statements and restricting the misuse of material non-public information; (v) failing to ensure that RSA Security not engage in any unsafe, unsound, or illegal business practices; and (vi) failing to

ensure that RSA Security's financial statements were not prepared in violation of Generally Accepted Accounting Principles ("GAAP").

4.     A stock option granted to an employee of a corporation allows the employee to purchase company stock at a specified price – referred to as the "exercise price" – for a specified period of time.  Stock options are granted as part of employees' compensation packages to create incentives for them to boost profitability and stock value.  When an employee exercises an option, he or she purchases the stock from the company at the exercise price, regardless of the stock's price at the time the option is exercised.

5.     Defendants caused or allowed RSA Security executives to manipulate their stock option grant dates so as to illegally maximize their stock profits.  In particular, certain RSA Security executives changed their respective stock option grant dates to take advantage of lower exercise prices than the price on the actual grant date.  The price of RSA Security shares on the reported option-grant date, therefore, was lower than the share price on the actual day options were issued – thus, providing Defendants with more favorably priced options.  Such conduct is unlawful.

6.     The backdating of these stock options brought an instant paper gain to these RSA Security executives because the options were priced below the stock's fair market value when they were actually awarded.  Under GAAP, this instant paper gain was equivalent to paying extra compensation and was thus a cost to RSA Security.  These costs were also not properly recorded.  In turn, since these costs were not properly recorded, RSA Security's profits were therefore overstated and may result in a restatement of RSA Security's past financial results going back several fiscal years.

7. Back-dating the options violated the Company's stated policy, which required that stock options be valued with an exercise price equal to the fair market value on the date of the grant. For example, as explained in, *inter alia*, the Company's April 27, 2001 Proxy Statement, under the Company's 1994 Stock Option Plan – 1998 Restatement, "the exercise price of each option is the closing price of the Common Stock on the Nasdaq National Market on the date of grant, which was determined by the Board of Directors to be the fair market value of the Common Stock on the date of grant." Moreover, as the Company explained in its Proxy Statement filed on April 28, 2006, "[t]raditionally, the [Compensation] Committee has granted stock-based awards to our executive officers in the form of stock options that vest in installments over four or five years, with an exercise price equal to the fair market value of our common stock on the date of grant."

8. Additionally, pursuant to the Company's 1994 Stock Option Plan – 1998 Restatement, incentive stock options purported to comply with Internal Revenue Code, Title 26, Section 422 ("Incentive Stock Options"), which provides, *inter alia*, that "the option price is not less than the fair market value of the stock at the time such option is granted." Back-dating the options also breached Defendants' fiduciary duties of care, loyalty, and good faith to RSA Security.

9. The unlawful conduct occurred while RSA Security's Board of Directors was directing the Company. These Defendants authorized, or failed to halt back-dating of options in dereliction of their fiduciary duties to the Company as directors, thus causing or allowing the Company to suffer millions of dollars in harm.

10. Defendants' wrongdoing has unjustly enriched certain RSA Security executives to the detriment of RSA Security and its stockholders; exposed RSA Security to liability in the

form of class action lawsuits, U.S. Attorney and SEC investigations; and caused substantial additional harm to RSA Security, such as to its reputation and goodwill.

**JURISDICTION AND VENUE**

11.    This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise in part under the Constitution and the laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(a)(1) because one or more of Defendants either resides or maintains executives offices in this Judicial District, and a substantial portion of the acts and transactions constituting the violations of law alleged in this Complaint occurred in substantial part in this Judicial District.  Moreover, Defendants have received substantial compensation in this Judicial District by doing business here and engaging in numerous activities that had an effect in this Judicial District.

13.    This action is not a collusive action designed to confer jurisdiction on a Court of the United States that it would not otherwise have.

**PARTIES**

**The Plaintiff**

14.    Plaintiff Julie D. Globus, Custodian for Tal M. Globus, is a New York resident, has owned RSA Security since January 31, 2000, and currently is an RSA Security shareholder.

5

15.    As a current holder of RSA Security common stock and a holder during the period of the wrongs alleged herein, and pursuant to Fed. R. Civ. P. 23.1, Plaintiff has standing to assert these claims on behalf of the Company and will fairly and adequately protect the interests of the Company and its other stockholders.

**Options Defendants**

16.    Defendant Arthur W. Coviello, Jr. ("Coviello") has served as Chief Executive Officer of RSA Security since January 2000, and as President of RSA Security since March 1999. Coviello has also served as Acting Chief Financial Officer of RSA Security since December 2005. From September 1995 to March 1999, Coviello served as Executive Vice President of RSA Security. From January 1997 to March 1999, Coviello served as Chief Operating Officer of RSA Security. From October 1995 to August 1997, Coviello served as Chief Financial Officer and Treasurer of RSA Security. From March 1992 to January 1994, Coviello served as Chief Operating Officer and Chief Financial Officer, among other capacities, for CrossComm Corporation, a developer of internetworking products. Coviello has served on the Board of Directors since 1999, and was a member of the Governance and Nominating Committee in 2000. Defendant Coviello is a citizen of the State of Massachusetts.

17.    For serving in his RSA Security capacities, upon information and belief, Coviello received approximately $440,000 in compensation, not including stock options, for fiscal year 2005. As of February 28, 2006, the RSA Security common stock beneficially owned by Coviello totaled 926,021 shares. Coviello received stock option grants in fiscal years 1999 and 2000, and 2002 through 2005. As per the Company's Proxy Statement filed March 13, 2000, in fiscal year 1999 Coviello acquired 150,000 shares on exercise of options, for a value realized of $4,367,188.

As per the Company's Proxy Statement filed March 28, 2001, in fiscal year 2000 Coviello acquired 45,000 shares on exercise of options, for a value realized of $2,347,031.

18.    Defendant Charles R. Stuckey, Jr. ("Stuckey") has served on the Board since 1987. Stuckey has served as Chairman Emeritus of RSA Security since June 2003. From July 1996 through June 2003, Stuckey served as Chairman of the Board of Directors of RSA Security. From March 1987 to January 2000, Stuckey served as Chief Executive Officer of RSA Security. From January 1987 through March 1999, Stuckey served as President of RSA Security. Stuckey served as President of RSA Investments, Inc., a wholly owned subsidiary of RSA Security, from 2000 to late 2001. Stuckey served on the Governance and Nominating Committee from 1997 through 2000. Stuckey received stock option grants in fiscal years 1996, 1999, 2000 and 2002. As per the Company's Proxy Statement filed March 13, 2000, in fiscal year 1999 Stuckey acquired 50,000 shares on exercise of options, for a value realized of $1,520,000. As of February 28, 2006, Stuckey was the beneficial owner of 429,009 shares of RSA Security common stock. Defendant Stuckey is a citizen of the State of Massachusetts.

19.    Defendant John Adams, Ph.D. ("Adams") served as Senior Vice President and Chief Technology Officer from 1998 through 2000. Adams received stock option grants in fiscal years 1998 and 1999. As per the Company's Proxy Statement filed March 13, 2000, in fiscal year 1999 Adams acquired 105,000 shares on exercise of options, for a value realized of $1,566,719. Defendant Adams is a citizen of the State of Massachusetts.

20.    Defendant John F. Kennedy ("Kennedy") served as Senior Vice President of Finance and Operations, and Chief Financial Officer in 2000. Kennedy received one stock option grant in fiscal year 2000. As per the Company's Proxy Statement filed March 28, 2001,

in fiscal year 2000 Kennedy acquired 37,499 shares on exercise of options, for a value realized of $1,620,648. Defendant Kennedy is a citizen of the State of Massachusetts.

21.    Defendant Scott T. Schnell ("Schnell") served as Senior Vice President of Sales, Marketing and Professional Services, from 1998 through November 2005. Schnell received stock option grants in fiscal years 1999, 2000, 2002 and 2003. As per the Company's Proxy Statement filed March 13, 2000, in fiscal year 1999 Schnell acquired 100,000 shares on exercise of options, for a value realized of $2,867,348. As per the Company's Proxy Statement filed March 28, 2001, in fiscal year 2000 Schnell acquired 35,000 shares on exercise of options, for a value realized of $2,403,184. Defendant Schnell is a citizen of the State of Massachusetts.

22.    Defendant Joseph Uniejewski ("Uniejewski") served as Senior Vice President of Engineering, from 1999 through 2004. Uniejewski received stock option grants in fiscal years 1999, 2000, 2002 and 2003. As per the Company's Proxy Statement filed March 13, 2000, in fiscal year 1999 Uniejewski acquired 37,500 shares on exercise of options, for a value realized of $853,406. As per the Company's Proxy Statement filed March 28, 2001, in fiscal year 2000 Uniejewski acquired 46,875 shares on exercise of options, for a value realized of $2,387,009. Defendant Uniejewski is a citizen of the State of Massachusetts.

23.    Defendants Coviello, Stuckey, Adams, Kennedy, Schnell and Uniejewski are collectively referred to herein as the "Options Defendants."

**Director Defendants**

24.    Defendant Gloria C. Larson ("Larson") has served on the Board since 2001. Larson has served on the Governance and Nominating Committee from 2002 through the present; on the Compensation Committee as of 2005; and on the Audit Committee in 2001. As

of February 28, 2006, Larson was the beneficial owner of 184,566 shares of RSA Security common stock. Defendant Larson is a citizen of the State of Massachusetts.

25.    Defendant Joseph B. Lassiter, III ("Lassiter") has served on the Board since 1996. Lassiter has served on the Governance and Nominating Committee from 1996 through the present, serving as Chairman of that Committee from 2002 through the present; on the Compensation Committee from 1996 through 2004; and on the Audit Committee as of 2005. As of February 28, 2006, Lassiter was the beneficial owner of 286,900 shares of RSA Security common stock. Defendant Lassiter is a citizen of the State of Massachusetts.

26.    Defendant Richard A. DeMillo, Ph.D. ("DeMillo") has served on the Board since 2002. DeMillo has served on the Compensation Committee from 2002 through the present. As of February 28, 2006, DeMillo was the beneficial owner of 115,000 shares of RSA Security common stock. Defendant DeMillo is a citizen of the State of Massachusetts.

27.    Defendant Richard L. Earnest ("Earnest") has served on the Board since 1993. Earnest has served on the Audit Committee from 1996 through the present, serving as Chairman of that Committee in 2001. Earnest also served on the Governance and Nominating Committee in 1996. As of February 28, 2006, Earnest was the beneficial owner of 216,000 shares of RSA Security common stock. Defendant Earnest is a citizen of the State of California.

28.    Defendant William H. Harris, Jr. ("Harris") has served on the Board since April 24, 2006. On that date, he received 785,123 shares of RSA Security common stock as partial consideration in RSA Security's acquisition of PassMark Security, Inc., of which Harris was Chairman and a substantial stockholder. Defendant Harris is a citizen of the State of Massachusetts.

29.    Defendant Orson G. Swindle, III ("Swindle") has served on the Board since 2005. As of February 28, 2006, Swindle was the beneficial owner of 50,000 shares of RSA Security common stock.  Defendant Swindle is a citizen of the State of Georgia.

30.    Defendant Robert P. Badavas ("Badavas") has served on the Board since 1999. Badavas has served on the Audit Committee from 1999 through the present, serving as Chairman of that Committee from 2002 through the present.  As of February 28, 2006, Badavas was the beneficial owner of 70,000 shares of RSA Security common stock.  Defendant Badavas is a citizen of the State of Massachusetts.

31.    Defendant James K. Sims ("Sims") has served on the Board since 1997.  Sims has served on the Compensation Committee from 1997 through the present, serving as Chairman of that Committee from 2002 through the present.  Sims has also served on the Governance and Nominating Committee from 1997 through the present.  As of February 28, 2006, Sims was the beneficial owner of 283,200 shares of RSA Security common stock.  Defendant Sims is a citizen of the State of Massachusetts.

32.    Defendant Taher Elgamal ("Elgamal") served on the Board from 1998 through 2004.  Elgamal served on the Compensation Committee from 1998 through 2001, and served on the Audit Committee from 2002 through 2004.  Defendant Elgamal is a citizen of the State of California.

33.    The Option Defendants Coviello and Stuckey, and Defendants Larson, Lassiter, DeMillo, Earnest, Harris, Swindle, Badavas, Sims, and Elgamal are sometimes referred to as the "Director Defendants."

**The Nominal Defendant**

34.    Nominal Defendant RSA Security is a Delaware Corporation and has maintained its principal executive offices at 174 Middlesex Turnpike, Bedford, Massachusetts, 01730.

35.    In its public filings, RSA Security describes itself and its consolidated subsidiaries as experts in protecting online identities and digital assets. RSA Security purports to be the inventor of core security technologies for the Internet, and to lead the way in strong authentication and encryption, bringing trust to millions of user identities and the transactions that they perform. RSA Security claims that its portfolio of award-winning identity and access management solutions helps businesses to establish who's who online – and what they can do. RSA Security common stock trades on the NASDAQ under the symbol "RSAS."

## OBLIGATIONS AND DUTIES OF THE DEFENDANTS

36.    By reason of their positions as directors, officers and/or fiduciaries of RSA Security and because of their ability to control the business, corporate and financial affairs of RSA Security, each of the Defendants owed RSA Security the duty to exercise due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets; the duty of loyalty to place the interests of the Company above his or her financial interests, and the duty of candor, including full and candid disclosure of all material facts related thereto. Further, Defendants owed a duty to RSA Security to ensure that RSA Security operated in compliance with all applicable federal and state laws, rules, and regulations; and that RSA Security not engage in any unsafe, unsound, or illegal business practices. The conduct of Defendants complained of herein involves knowing violations of their duties as directors of RSA Security, and the absence of good faith on their part which Defendants were aware or should have been aware posed a risk of serious injury to RSA Security.

37.    To discharge these duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of RSA Security.  By virtue of this obligation of ordinary care and diligence, Defendants were required, among other things, to:

(a)    manage, conduct, supervise, and direct the employees, businesses and affairs of RSA Security, in accordance with laws, rules and regulations, and the charter and by-laws of RSA Security;

(b)    neither violate nor knowingly or recklessly permit any officer, director or employee of RSA Security to violate applicable laws, rules and regulations and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by RSA Security;

(c)    remain informed as to how RSA Security was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow Defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit;

(d)    supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by RSA Security and to examine and evaluate any reports of examinations or

investigations concerning the practices, products or conduct of officers of RSA Security and to make full and accurate disclosure of all material facts, concerning *inter alia*, each of the subjects and duties set forth above; and

(e)    preserve and enhance RSA Security's reputation as befits a public corporation and to maintain public trust and confidence in RSA Security as a prudently managed institution fully capable of meeting its duties and obligations.

38.    Defendants breached their duties of loyalty, due care and/or good faith by allowing Defendants to cause or by themselves causing the Company to misrepresent its financial results, as detailed herein, and/or by failing to prevent Defendants from taking such illegal actions.

## THE RSA SECURITY BOARD OF DIRECTORS

39.    Director Defendants, by their fiduciary duties of care, good faith and loyalty, owed to RSA Security a duty to insure that the Company's financial reporting fairly presented, in all material aspects, the operations and financial condition of RSA Security.   In order to adequately carry out these duties, it is necessary for Director Defendants to know and understand the material, non-public information to be disclosed or omitted from the Company's public statements.   This material, non-public information included the fact that RSA Security's internal controls were woefully defective and that the Company's executives were improperly backdating their stock options.

40.    **Committees of the Board.**  The standing committees of the RSA Security Board include: (i) the Audit Committee; (ii) the Compensation Committee; and, (iii) the Corporate Governance and Nominating Committee.

41.    *Audit Committee.*  Defendants Badavas, Larson, Lassiter, Earnest, and Elgamal have been members of the Audit Committee during the Relevant Period.  Defendant Badavas is the chairman of the Audit Committee and the Board has determined that he qualifies as an "audit committee financial expert" as defined in item 401(h)(2) of Regulation S-K and pursuant to Section 407 of Sarbanes-Oxley.

42.    As members of the Audit Committee, Defendants Badavas, Larson, Lassiter, Earnest, and Elgamal had a special duty to know and understand this material information regarding the stock-option grants as set out in the Audit Committee's charter, which provides that the Audit Committee's purpose is "to assist the Board of Directors' oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements, including:  the integrity of the Company's financial statements;  the Company's compliance with legal and regulatory requirements;  the independent auditor's qualifications and independence; and  the performance of the Company's independent auditors."

43.    The members of the Audit Committee knew or should have known that RSA Security's financial statements were inaccurate and certain stock option grants were improper and thereby permitted or condoned the unlawful practices described herein. Accordingly, Defendants Badavas, Larson, Lassiter, Earnest, and Elgamal, through their improper execution of their duties and responsibilities as members of the RSA Security Audit Committee, knew of or recklessly disregarded the unlawful practices at RSA Security described herein.

44.    **Compensation Committee**.    Defendants Larson, Lassiter, DeMillo, Sims and Elgamal have been members of the Compensation Committee during the Relevant Period.

45.    As members of the Compensation Committee, Defendants Larson, Lassiter, DeMillo, Sims and Elgamal were responsible for administering the issuance of awards under the Company's stock option plans.  In particular, the Compensation Committee's responsibilities include: **(i)** reviewing and approving corporate goals and objectives for the compensation of our Chief Executive Officer, evaluating the CEO's performance in light of those goals and objectives, and setting the CEO's compensation level based on this evaluation; **(ii)** reviewing and approving the compensation of the Company's other officers; **(iii)** administering the Company's stock plans and granting stock options and other equity compensation to our executive officers, directors and employees; **(iv)** reviewing and making recommendations to the full Board of Directors with respect to the compensation of the Company's non-employee directors; **(v)** overseeing the evaluation of the Company's senior executives; and **(vi)** reviewing and making recommendations to the full Board of Directors with respect to succession planning.

46.    Accordingly, the members of RSA Security's Compensation Committee are responsible for administering the issuance of awards under the Company's stock option plans. Therefore, Defendants Larson, Lassiter, DeMillo, Sims and Elgamal were responsible to review the stock options grant to RSA Security executives during their respective tenures on the Compensation Committee. These Director Defendants did not fulfill this duty, therefore causing or allowing the Company's executives to obtain unreasonable and unreported compensation via the backdating of stock option grants.

47.    **Governance and Nominating Committee.**    The Governance and Nominating Committee is comprised of Defendants Lassiter, Sims and Larson.  The members of RSA

Security's Governance and Nominating Committee are responsible for overseeing the Board and ensuring compliance with the Corporate Governance Standards. Therefore, Directors Lassiter, Sims and Larson were responsible to review the stock options grant to RSA Security executives during their respective tenures on the Governance and Nominating Committee. These Defendants did not fulfill this duty, therefore causing or allowing the Company's executives to obtain unreasonable and unreported compensation via the backdating of stock option grants.

48.     The improper dating of these stock options, in turn, caused a misstatement of RSA Security's earnings because the compensation costs in connection with the misdated options were not properly recorded in violation of GAAP.

49.     Director Defendants had ample opportunity to discuss this material information with management and their fellow directors at any of the Board meetings that occurred during the Relevant Period, as well as at meeting of committees of the Board.

50.     Despite these duties, Director Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the improper backdating of stock options grants and the making of false and misleading statements concerning those grants that were disseminated by RSA Security to the investing public and the Company's shareholders during the Relevant Period.

51.     Instead of properly disclosing these improper stock option backdating practices and the corresponding understatement of compensation costs, Director Defendants caused or allowed these practices to continue unabated throughout the Relevant Period.

## FURTHER SUBSTANTIVE ALLEGATIONS

52.     Plaintiff, derivatively on behalf of RSA Security, seeks relief for the damages sustained, and to be sustained by RSA Security, as a result of Defendants' violations of state and

federal law, including their breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), during the Relevant Period.

53.    As explained by an article published in the Wall Street Journal on May 18, 2006, on or about May 16, 2006, an accounting research firm, the Center for Financial Research and Analysis ("CFRA"), issued a report (the "CFRA Report") that examined stock option grants in 100 companies that issued a high proportion of stock option grants relative to its executive compensation. The study identified 17 companies that were at risk for manipulating the timing of their option grants between 1997 and 2002, one of which was RSA Security. Each of these 17 companies, on three or more occasions, granted options at exercise prices that matched, or were close to, the lows of the company stock price between 1997 and 2002, followed by a bounce of at least 10% in stock price.

54.    At least two of Coviello's stock option grants were awarded immediately preceding an over *twenty five percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

> .    The Company awarded Defendant Coviello two stock option grants in 1999. Allegedly, on October 13, 1999, he was awarded 200,000 options with an exercise price of $29.81. But a mere twenty days later, on November 10, 1999, the stock climbed over nine dollars to $38.87, an over *thirty percent* return.

> .    The Company awarded Defendant Coviello two stock option grants in 2000. Allegedly, on November 29, 2000, he was awarded 150,000 options with an exercise price of $43.00. But a mere twenty days later, on December 28, 2000, the stock climbed over eleven dollars to $54.12, an almost *twenty six percent* return.

55.    At least one of Stuckey's stock option grants was awarded immediately preceding an over *thirty percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

> . The Company awarded Defendant Stuckey two stock option grants in 1999. Allegedly, on October 13, 1999, he was awarded 200,000 options with an exercise price of $29.81. But a mere twenty days later, on November 10, 1999, the stock climbed over nine dollars to $38.87, an over *thirty percent* return.

56. At least two of Adams' stock option grants were awarded immediately preceding an over *thirty three percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

> . The Company awarded Defendant Adams three stock option grants in 1999. Allegedly, on November 18, 1999, he was awarded 25,000 options with an exercise price of $42.50. But a mere twenty days later, on December 17, 1999, the stock climbed over fourteen dollars to $56.56, an over *thirty three percent* return.

> . Moreover, allegedly, on December 8, 1999, he was awarded 25,000 options with an exercise price of $37.15. But a mere twenty days later, on January 6, 2000, the stock climbed over twenty three dollars to $60.19, an over *sixty two percent* return.

57. Kennedy's stock option grant was awarded immediately preceding an over *twenty five percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

> . The Company awarded Defendant Kennedy one stock option grant in 2000. Allegedly, on November 29, 2000, he was awarded 50,000 options with an exercise price of $43.00. But a mere twenty days later, on December 28, 2000, the stock climbed over eleven dollars to $54.12, an almost *twenty six percent* return.

58. At least three of Schnell's stock option grants were awarded immediately preceding an over *twenty six percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

> . The Company awarded Defendant Schnell three stock option grants in 1999. Allegedly, on November 18, 1999, he was awarded 125,000 options with an exercise price of $42.50. But a mere twenty days later, on December 17, 1999, the stock climbed over fourteen dollars to $56.56, an over *thirty three percent* return.

. Allegedly, on December 8, 1999, he was awarded 25,000 options with an exercise price of $37.15. But a mere twenty days later, on January 6, 2000, the stock climbed over *twenty three* dollars to $60.19, an over *sixty two percent* return.

. The Company awarded Defendant Schnell one stock option grant in 2000. Allegedly, on November 29, 2000, he was awarded 75,000 options with an exercise price of $43.00. But a mere twenty days later, on December 28, 2000, the stock climbed over eleven dollars to $54.12, an almost *twenty six percent* return.

59.    At least two of Uniejewski's stock option grants were awarded immediately preceding an over *twenty six percent* climb in the Company's stock, which climb occurred within twenty days of the date of the grant:

. The Company awarded Defendant Uniejewski two stock option grants in 1999. Allegedly, on October 19, 1999, he was awarded 125,000 options with an exercise price of $29.63. But a mere twenty days later, on November 16, 1999, the stock climbed nearly twelve dollars to $41.62, an over *forty percent* return.

. The Company awarded Defendant Uniejewski one stock option grant in 2000. Allegedly, on November 29, 2000, he was awarded 75,000 options with an exercise price of $43.00. But a mere twenty days later, on December 28, 2000, the stock climbed over eleven dollars to $54.12, an almost *twenty six percent* return.

60.    On May 19, 2006, RSA Security issued a press release announcing that it had received a letter of inquiry from the Securities and Exchange Commission, requesting documents related to the Company's stock option grants and stock option practices. The release states that it was recently identified in a third-party report regarding the timing and pricing of stock option grants, and that the report highlighted options granted by the Company on three specific dates during the period of October 1997 to November 2000.

61.    On this news, RSA Security stock fell $2.15 per share, or approximately *12.3 percent* from $17.30 on May 19, 2006 to its close at $15.15.

62.    On May 23, 2006, the Boston Globe reported, in an article entitled *Timing is Everything*, that RSA Security was responding to questions from the Securities and Exchange Committee about its options awards. Along the same lines, the article noted, *inter alia*, that RSA executives had received other benefits pertaining to their stock options that common investors did not share:

> RSA executives benefited from a 2002 program to reprice options made worthless by the company's stock slump. The options, as originally granted, would still hold no value today but appreciated substantially since their repricing.

> Many companies did the same thing, but public investors who owned RSA stock enjoyed no similar recovery plan.

63.    Moreover, the Company has a history of opposing transparency when it comes to stock options. In 2004, when the Financial Accounting Standards Board unveiled a proposal to require companies to record the value of their stock options on their income statements beginning in 2005, corporate executives including Defendant Coviello lobbied against the proposal, testifying before Congress to oppose the expensing of stock options. In an April 1, 2004 interview with CNBC Anchor, Brad Goode, Defendant Coviello discussed accountability and transparency in the treatment of stock options by public companies. Defendant Coviello stated, in pertinent part:

> COVIELLO: I don't know why the current system doesn't work. The dilutive effects of stock options are already in the calculation of earnings per share. We had a 10 percent dilutive effect of our stock options, all of our stock options are fully-disclosed in the footnotes. ***Why change something if it's not broken?***

> GOODE: Well, I know that, you know, many companies, I'm sure yourself included, also complain that perhaps it's too complicated, maybe too easy to fudge. If we're going in this direction, what do you believe is the correct equation to accurately account for options?

COVIELLO: Well, if you look at the current method of taking the dilutive effects of stock options into account in the earnings per share calculation, I think that works. It has worked for a lot of years. *Now, if you're talking about abuses of the system, go after that.* Reform executive compensation, if you will. But we're talking about broad-based stock option plans that go to many, many employees in tech companies. We're not talking about abuses at Enron or bigger companies like Coca-Cola that don't have broad-based stock option plans.

(emphasis added).

64.     Despite Defendant Coviello's statement to the contrary, the manner in which the Company was treating stock options was broken, as it allowed for the backdating of stock option grants at the expense of the Company - - just the sort of "abuses of the system" which Defendant Coviello was purportedly condemning.

65.     The practice of back-dating stock options not only lined the pockets of the Company's executives at the direct expense of the Company but also resulted in the overstatement of the Company's profits during the Relevant Period.  This is because options priced below the stock's fair market value when they were awarded brought the recipient an instant paper gain that must be accounted for as additional compensation and treated as an expense to the Company.  The Company must account for the options at a lower price, and may have to restate its results to reflect the previously unreported expenses.

66.     The practice of back-dating options has caused the Company to suffer additional adverse consequences, including: **(i)** the drop in its stock price attributable to the market's loss of confidence in the Company's management, thus increasing the Company's cost of borrowing and otherwise harming its operations, and **(ii)** exposure to the cost of defending against and potential liability for regulatory actions and private securities class actions.

67.     Defendants have made no effort to undo or recover previous grants.

68.    Defendants' conduct has unjustly enriched RSA Security's top executives to the detriment of RSA Security and its shareholders.

69.    During the Relevant Period, the Company, through the actions of the Board and its Compensation Committee, granted stock options for the purchase of hundreds of thousands of shares of the Company's common stock along with certain other perks to the Options Defendants.

70.    Contrary to the foregoing contractual provisions and public disclosures, the stock options were not, in fact, priced on the date of the grant, but were in fact back-dated, or were granted at a low price in complete disregard of the actual price of the stock on the day of the grant.

71.    The Compensation Committee was responsible for overseeing the details of the Company's compensation, employee benefit and stock option plans.    The Compensation Committee was also responsible for supervising incentive compensation programs for the Company's employees, and reviewing and monitoring director compensation programs.

72.    In its public filings with the Securities and Exchange Commission, the Company represented that the exercise price of the stock options would be equal to the fair market value of the Company's common stock, measured by the publicly traded closing price for the Company stock, on the date of the grant.

73.    Defendants violated their fiduciary duties to the Company by failing to act with due care, loyalty and good faith, when they either expressly authorized the practice of back-dating options, or in conscious abrogation of their fiduciary duties, permitted it to occur.

74.    Defendants misrepresented and caused the Company to misrepresent in public SEC filings that the stock options were priced at no less than the fair market value of the shares

on the date of the grant, thereby affirmatively concealing the claims set forth herein. The stock option plan, referenced above, was published in the Company's Definitive Proxy Statement(s) and incorporated by reference each year in the Company's Annual Reports on Form 10-K. Also, the executive compensation, including their stock option grants, were disclosed in the Company's yearly proxy statements promulgated in connection with the Company's annual meetings. Defendants' misrepresentations about their stock option pricing practices were known to be false or were made in reckless disregard of its truth or falsity, and the concealment could not have been discovered through reasonable diligence by the typical shareholder, prior to the Company's issuance of its May 19, 2006 press release.

75.    The unlawful conduct occurred while Director Defendants were directing the Company. These Director Defendants authorized, modified, or failed to halt back-dating of options in dereliction of their fiduciary duties to the Company as directors, thus causing or allowing the Company to suffer millions of dollars in harm.

76.    Defendants' breaches of their fiduciary duties have exposed the Company to a number of harms including: the expense of internal investigation; the expense of SEC investigations; the potential liability under tax laws and federal securities laws; the possibility of having to restate financial results; and liability to stock purchasers.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

77.    Plaintiff brings this action derivatively in the right and for the benefit of RSA Security to redress injuries suffered, and to be suffered, by RSA Security as a direct result of Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of federal securities laws. RSA Security is

named as a Nominal Defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

78.    Plaintiff will adequately and fairly represent the interests of RSA Security in enforcing and prosecuting its rights.

79.    Plaintiff is and was an owner of RSA Security stock during times relevant to Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

80.    Plaintiff has not made any demand upon the current RSA Security Board to bring an action asserting the claims herein, for the damages suffered by RSA Security, since such demand would be a futile, wasteful and useless act, particularly for the following reasons:

.    Demand is excused because the unlawful acts and practices alleged herein cannot be defended by the Defendants and are not subject to the protection of any independent business judgment since it would undoubtedly be to the benefit of RSA Security to recover the damages caused by Defendants' wrongdoing and to assert these derivative claims.

.    Demand is excused because the wrongs alleged herein constitute violations of the fiduciary duties owed by the Board to the shareholders and are incapable of ratification by the current Board.  The Defendants are subject to liability for breaching their fiduciary duties to RSA Security by, *inter alia*, failing to adequately monitor RSA Security's financial reporting, and to detect, prevent and/or halt the back-dating of stock options and the material misstatements complained of herein.

.    As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and

attendance at management and Board meetings, each of the Defendants knew the adverse, non-public information regarding the improper backdating of stock options.

.   In addition to the conflicts that exist as a result of their participation in the improper conduct alleged herein, demand is also excused because the Defendants have ratified the egregious actions outlined herein, and these same Defendants cannot be expected to prosecute claims against themselves, and persons with whom they have extensive inter-related business, professional and personal entanglements, if Plaintiff demanded that they do so. The Defendants, because of these relationships, have developed debilitating conflicts of interest that prevent the Board from taking the necessary and proper action on behalf of the Company.

.   Demand is also excused because the Defendants participated in, approved and/or permitted the wrongs alleged herein, concealed or disguised those wrongs or recklessly and/or negligently disregarded them, and are therefore not disinterested parties and lack sufficient independence to exercise business judgment as described in the paragraphs herein.

.   The Audit Committee is currently comprised of Defendants Badavas, Earnest and Lassiter.  Defendant Badavas is the chair of the Audit Committee and the Board determined that he qualifies as an "audit committee financial expert" as defined in item 401(h)(2) of Regulation S-K and pursuant to Section 407 of Sarbanes-Oxley.  Defendants Badavas, Earnest, Elgamal and Larson were on the Audit Committee during the time in which the Company's financial statements were rendered inaccurate by the improper backdating of stock option grants.  As its charter states, the Audit Committee is obligated "to assist the Board of Directors' oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements, including:   the integrity of the Company's financial statements; the Company's compliance with legal and regulatory requirements; the

independent auditor's qualifications and independence; and the performance of the Company's

independent auditors." Defendants Badavas, Earnest, Elgamal and Larson were responsible, as

members of RSA Security's Audit Committee, for insuring that the Company's internal controls

were adequate and that the Company's quarterly and annual financial statements were accurate.

RSA Security's internal controls, however, were woefully deficient as evidenced by its

executives' improper backdating of stock option grants. As a result of this improper option

backdating, the Company's financials were rendered inaccurate because those financials did not

account for the true amount of compensation being granted to RSA Security's executives.

Accordingly, there is reasonable doubt that Defendants Badavas, Earnest, Elgamal and Larson

are disinterested because they face a substantial likelihood of liability for their breaches of

fiduciary duty to RSA Security. Thus, demand is futile as to Defendants Badavas, Earnest,

Elgamal and Larson.

.    The Compensation Committee is currently comprised of Defendants Sims,

DeMillo and Larson.    Defendants Sims, Lassiter, DeMillo and Elgamal were on the

Compensation Committee during the time in which the Company's financial statements were

rendered inaccurate by the improper backdating of stock option grants.  The members of RSA

Security's Compensation Committee are responsible for administering the issuance of awards

under the Company's stock option plans.  Therefore, Defendants Sims, Lassiter, DeMillo and

Elgamal were responsible to review the stock options grant to RSA Security executives during

their respective tenures on the Compensation Committee.  These Defendants did not fulfill this

duty, therefore causing or allowing the Company's executives to obtain unreasonable and

unreported compensation via the backdating of stock option grants.  Accordingly, there is

reasonable doubt that Defendants Sims, Lassiter, DeMillo and Elgamal are disinterested because

they face a substantial likelihood of liability for their breaches of fiduciary duty to RSA Security. Thus, demand is futile as to Defendants Sims, Lassiter, DeMillo and Elgamal.

.    The Governance and Nominating Committee is currently comprised of Defendants Lassiter, Sims and Larson.  Defendants Lassiter, Sims, Larson, Coviello and Stuckey were on the Governance and Nominating Committee during the time in which the Company's financial statements were rendered inaccurate by the improper backdating of stock option grants. The members of RSA Security's Governance and Nominating Committee are responsible for overseeing the Board and ensuring compliance with the Corporate Governance Standards. Therefore, Defendants Lassiter, Sims, Larson, Coviello and Stuckey were responsible to review the stock options grant to RSA Security executives during their respective tenures on the Governance and Nominating Committee.  These Defendants did not fulfill this duty, therefore causing or allowing the Company's executives to obtain unreasonable and unreported compensation via the backdating of stock option grants.  Accordingly, there is reasonable doubt that Defendants Lassiter, Sims, Larson, Coviello and Stuckey are disinterested because they face a substantial likelihood of liability for their breaches of fiduciary duty to RSA Security.  Thus, demand is futile as to Defendants Lassiter, Sims, Larson, Coviello and Stuckey.

.    Each of the Defendants knew of and/or directly benefited from the wrongdoing complained of herein.

.    The Defendants, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from RSA Security's stockholders or recklessly and/or negligently disregarded those wrongs, and are therefore not disinterested parties.

.   In order to bring this suit, all the RSA Security Defendants would be forced to sue themselves and persons with whom they have extensive business, professional and personal entanglements, which they will not do, thereby excusing demand.

.   Demand is also excused because insurance policies covering the liability of a company's directors and officers purport to exclude legal claims asserted directly by the Company against such persons.   Thus, there was, and is, a substantial disincentive for RSA Security to bring any action directly against Defendants.   Generally, under the terms of such directors' and officers' insurance policies, a company would be required by the carriers to cooperate in the defense of any claims, such as the present action, which seek to impose liability upon certain officers and directors of RSA Security, including Defendants in this action, for misconduct and mismanagement.   Thus, if the policy or policies which RSA Security maintains contain the foregoing provision, the insurance carriers would argue that RSA Security and its Board are thereby contractually disabled from complying with any demand that would cause RSA Security to institute, and/or prosecute any action against Defendants for such misconduct and mismanagement; because to do so could result in the loss to RSA Security of its insurance coverage.

.   Moreover, RSA Security has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein. Despite Directors Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for RSA Security for any of the wrongdoing alleged by Plaintiff herein.

.   Demand is futile because the Board cannot be presumed to exercise independent judgment in assessing the merits of a demand due to their personal and financial

interest in the subject matter of many of the claims raised in this Complaint. In addition, the failures of the Board to design and implement an effective corporate information and reporting system to assure the existence of reasonable internal financial controls and the accuracy of the Company's publicly reported financial information cannot constitute a good faith exercise of business judgment. The Board would thus be required potentially to investigate and bring claims against themselves for their own misconduct. No shareholder demand could or would prompt the Board to take action. As such, demand is excused.

## COUNT I

### Derivative Claim for Violation of Section 14(a) of the Exchange Act

81.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.    The Defendants caused to be issued and participated in the issuance of materially false and misleading written statements to shareholders that were contained in the Company's Definitive Proxies that were filed on April 15, 2002 and April 9, 2003. Each of the Definitive Proxies misrepresented or omitted, *inter alia*, the facts set forth above. By reasons of the conduct alleged herein, each Director Defendant violated Section 14(a) of the Exchange Act.

83.    This information was material because it would have influenced the shareholders' decision in choosing directors to manage the Company.

84.    As a result of these violations of Section 14(a) of the Exchange Act, the Company suffered injuries.

## COUNT II

### Derivative Claim for Breach of Fiduciary Duty

85.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.     The Defendants owe RSA Security fiduciary obligations. By reason of their fiduciary relationships, the Defendants owed and owe RSA Security the highest obligation of good faith, fair dealing, loyalty and due care in the management and administration of the affairs of the Company, as well as in the financial accounting, auditing and reporting of the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts thereto.

87.     The Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and disclosure by, *inter alia*, (i) the reckless disregard with which they published the financial statements of RSA Security that did not conform to GAAP; (ii) the reckless disregard with which they supervised the audits and reviews of RSA Security's financial statements and internal controls and procedures; and (iii) the violation of their duties of loyalty in failing to detect, prevent and/or disclose RSA Security accounting misstatements, and the weaknesses in the internal controls and procedures of the Company, as previously described herein.

88.     Defendants also each owed a duty to RSA Security to test, oversee and monitor their systems of internal disclosure, financial and accounting controls, governance procedures and disclosure procedures and to ensure that they were functioning in an effective manner and in compliance with, *inter alia,* the Sarbanes-Oxley Act of 2002.

89.    Each of the Defendants authorized, or by abdication of duty, permitted the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

90.    As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Defendants have caused, and will continue to cause, RSA Security to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to RSA Security's reputation, business and good will.

91.    The Company has been directly and substantially injured by reason of the Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company.  Plaintiff, as a shareholder and representative of RSA Security, seeks damages and other relief for the Company, in an amount to be proven at trial.

92.    Plaintiff, on behalf of RSA Security, has no adequate remedy at law.

## COUNT III

### Derivative Claim For Gross Mismanagement

93.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.    By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and businesses of RSA Security in a manner consistent with the operations of a publicly held corporation.

95.     As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, RSA Security has suffered substantial monetary damages, as well as further and even greater damage in the future, including damage to RSA Security's reputation and good will.

96.     By failing to properly consider the interests of the Company and its public shareholders and by failing to conduct proper supervision, the Defendants, without any valid corporate purpose, have caused the Company to waste valuable corporate assets solely for the financial gain of RSA Security's top executives.

97.     Defendants are liable to the Company as a result of the misconduct alleged herein.

## COUNT IV

### Derivative Claim For Waste Of Corporate Assets

98.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99.     By engaging in the wrongdoing alleged herein, Defendants wasted corporate assets by, among other things, improperly granting stock option grants, improperly manipulating stock options, failing to recover improperly secured profits, damaging the goodwill and reputation of the Company, and exposing the company to civil and criminal liability, for which they are liable.

100.     As a direct and proximate result of Defendants' wrongful conduct, the Company has suffered damages in an amount to be proven at trial.

## COUNT V

### Against The Options Defendants For Unjust Enrichment
### And Breach Of The Duty Of Loyalty

101.     Plaintiff incorporates by reference all paragraphs above as if set forth herein.

102. As a result of the back-dating of the options granted to them, the Options Defendants have been and will continue to be unjustly enriched at the expense of, and to the detriment of, the Company.

103. Accordingly, this Court should order the Options Defendants to disgorge all profits, benefits and other compensation obtained by the Options Defendants, and each of them, from their wrongful conduct and fiduciary breaches described herein, and should order the options held by the Options Defendants, which have not yet been exercised, to be repriced at the market price of the Company's stock on the dates the Court finds that those options were actually, in fact, granted.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, gross mismanagement, waste of corporate assets and abuse of control;

B. Grating equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of RSA Security have an effective remedy;

C. Declaring each improperly dated option grant to be null and void, and awarding to the Company restitution from the Options Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Options Defendants as a result of the conduct alleged herein;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 31, 2006

**CHIMICLES & TIKELLIS LLP**

Pamela Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
P.O. Box 1035
One Rodney Square
Wilmington, DE 19899
Telephone: (302) 656-2500
Facsimile: (302) 656-9053

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Lawrence P. Kolker, Esq.
Scott J. Farrell, Esq.
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**SABHARWAL & ASSOCIATES**
Rohit Sabharwal, Esq.
350 Fifth Avenue, Suite 4606
New York, New York 10118
Telephone: (212) 239-9009
Facsimile: (212) 239-9229

440852.12

I, Julie D. Globus, as Custodian for Tal M. Globus, minor child, declare that I am a shareholder of RSA Security Inc. common stock and have continuously so owned this common stock since January 31, 2000.

I have reviewed the foregoing Verified Derivative Action Complaint, and authorized its filing.  Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of perjury under the laws of the United States.

Dated: May 31, 2006

Julie D. Globus, as Custodian for
Tal M. Globus, minor child

440794

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS JULIE D. GLOBUS, CUSTODIAN FOR TAL M. GLOBUS | DEFENDANTS ARTHUR W. COVIELLO, JR. See following page for additional defendants. |
|---|---|
| (b) County of Residence of First Listed Plaintiff Rockland County, NY (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Pamela S. Tikellis, Chimicles & Tikellis One Rodney Square, Wilmington, DE 19899 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | **PERSONAL PROPERTY** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 370 Other Fraud | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 371 Truth in Lending | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 380 Other Personal Property Damage | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 385 Property Damage Product Liability | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 442 Employment | **Habeas Corpus:** | | |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 15 USC §78

Brief description of cause: Derivative Action Under Sec. 14(a) of Exchange Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 6-1-06

SIGNATURE OF ATTORNEY OF RECORD *Pamela Tikellis*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

<u>Additional Defendants</u>

Charles R. Stuckey, Jr.
John Adams
John F. Kennedy
Scott T. Schnell
Joseph Uniejewski
Gloria C. Larson
Joseph B. Lassiter III
Richard A. Demillo
Richard L. Earnest
William H. Harris, Jr.
Orson G. Swindle III
Robert P. Badavas
James K. Sims
Taher Elgamal

and

RSA Security Inc.,

     Nominal Defendant.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____0 6 - 3 6 7_____

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___16___ COPIES OF AO FORM 85.

_____6 - 1 - 06_____
(Date forms issued)

_____Danny P Ryln f_____
(Signature of Party or their Representative)

DANNY P RANDOLPH Sr.
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action