## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JULIE D. GLOBUS, CUSTODIAN FOR TAL M. GLOBUS,<br><br>        Plaintiff,<br><br>v.<br><br>ARTHUR W. COVIELLO, CHARLES R. STUCKEY, JR., JOHN ADAMS, JOHN F. KENNEDY, SCOTT T. SCHNELL, JOSEPH UNIEJEWSKI, GLORIA C. LARSON, JOSEPH B. LASSITER III, RICHARD A. DEMILLO, RICHARD L. EARNEST, WILLIAM H. HARRIS, JR., ORSON G. SWINDLE III, ROBERT P. BADAVAS, JAMES K. SIMS, TAHER ELGAMAL,<br><br>        Defendants,<br><br>and<br><br>RSA SECURITY INC.,<br><br>        Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 06-00367-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF MOTION TO DISMISS

Of Counsel:
Jeffrey B. Rudman
Christopher Davies
Michael R. Dube
Wilmer Hale LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory P. Williams (#2168)
williams@RLF.com
Harry Tashjian, IV (#4609)
tashjian@RLF.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-7700
Counsel for Defendants

Dated: July 17, 2006

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF ARGUMENT .................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ............................................................................................................................4

I.    Plaintiff Lacks Standing to Sue for Misconduct in Connection With All But One of
      the Challenged Stock Option Grants, and All Plaintiff's Claims are Barred by the
      Relevant Statute of Limitations. .....................................................................................4

II.   The Complaint Should Be Dismissed Because Plaintiff Fails as a Matter of Law To
      Adequately Plead Demand Futility. ................................................................................5

      A.    The Board is Disinterested and Independent. ........................................................6

            1.    Plaintiff's Allegation that Suspicious Stock Options Were
                  Granted in 1999 and 2000 Does Not Imply that the Two
                  Directors Who Received the Grants Are Interested. ....................................7

            2.    Plaintiff's Allegations of Misaccounting Do Not Render the
                  Majority of the Board Interested. ................................................................8

            3.    Plaintiff's Allegation of False or Misleading Public Statements
                  Regarding the Company's Stock Option Plans Is Not Properly
                  Pled. ..........................................................................................................10

            4.    Plaintiff's Allegations that the Directors "Participated" in
                  Wrongdoing Fail to Establish a Director Interest. ....................................11

            5.    Mere Service on Committees Does Not Mean Directors Face a
                  Substantial Likelihood of Personal Liability. ............................................12

            6.    Conclusory Allegations That Defendants Would Not Sue
                  Themselves Do Not Demonstrate Interest Sufficient to Excuse
                  Demand. .....................................................................................................12

            7.    Plaintiff Fails to Allege Particularized Facts Establishing That
                  Any Director Lacks Independence. ............................................................13

      B.    Plaintiff Pleads Neither Reasonable Doubt that the Challenged Options
            Grants Were Other Than a Valid Exercise of Business Judgment Nor that
            the Board Could Not Impartially Consider Demand. ...........................................14

| | | | |
|---|---|---|---|
| | 1. | Plaintiff Fails to Create a Reasonable Doubt that the Challenged Option Grants Were Other Than a Valid Exercise of Business Judgment. | 15 |
| | 2. | Neither the Board's Alleged Role in the Stock Options Grants in Question Nor Any Other Factor Calls Into Question the Board's Impartiality. | 15 |
| C. | | Plaintiff's Decision to Base Her Complaint on Newspaper Stories, Rather Than Thorough Inquiry, Requires that Dismissal Be With Prejudice. | 16 |
| III. | | Even if Demand Were Excused, the Complaint Should be Dismissed. | 17 |
| A. | | The Complaint Does Not Satisfy Fed. R. Civ. P. 8(a)(2). | 17 |
| B. | | Individual Counts of the Complaint Fail to State a Claim on Which Relief Can Be Granted. | 19 |
| | 1. | Plaintiff's 14(a) Claim Must Be Dismissed Pursuant to Rule 12(b)(6). | 19 |
| | 2. | RSA's Exculpatory Clause Bars Plaintiff's Claims that Board Members Breached Their Duty Of Care and Engaged in Gross Mismanagement. | 19 |
| | 3. | Plaintiff Fails to State a Claim of Corporate Waste. | 22 |
| | 4. | Plaintiff Fails to State a Claim for Unjust Enrichment. | 22 |
| C. | | Plaintiff's Claim for Damages is Premature, Speculative, and Defectively Conclusory. | 25 |
| CONCLUSION | | | 27 |

# TABLE OF AUTHORITIES

## Federal Cases

*A.R. Demarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*,
No. Civ. A. 19133-NC, 2002 WL 31820970 (Del. Ch. Nov. 26, 2002 revised Dec. 4,
2002) ............................................................................................................................... 15

*Allied Corp. v. Frola*,
701 F.Supp. 1084 (D.N.J. 1988) ...................................................................................... 17

*Blasband v. Rales*,
971 F.2d 1034 (3d Cir. 1992) ................................................................................. 4, 9, 13

*Conley v. Gibson*,
355 U.S. 41 (1957)............................................................................................................ 17

*Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb*,
385 F.Supp.2d 449 (D. Del. 2004)................................................................................... 22

*Daisy Sys. Corp. v. Finegold*,
No. C 86-20719 (SW), 1988 WL 166235 (N.D. Cal. Sept. 19, 1988)............................ 25

*Gannon v. Continental Ins. Co.*,
920 F.Supp. 566 (D. Del. 1996)....................................................................................... 19

*Gen'l Elec. Co. v. Cathcart*,
980 F.2d 927 (3d Cir. 1992) ............................................................................................ 19

*Guttierrez v. Logan*,
No. Civ. A. H-02-1812, 2005 WL 2121554 (S.D. Tex. Aug. 31, 2005) ......................... 21

*In re Symbol Techs. Sec. Litig.*,
762 F. Supp. 510 (E.D.N.Y. 1991) .................................................................................. 25

*In re United Telecomms., Inc. Sec. Litig.*,
No. 90-2251-EEO, 1993 WL 100202 (D. Kan. Mar. 4, 1993)................................... 25, 26

*Kamen v. Kempner Fin. Servs. Inc.*,
500 U.S. 90 (1991)............................................................................................................. 5

*Kanter v. Barella*,
388 F.Supp.2d 474 (D.N.J. 2005) .................................................................................... 12

*Kenney v. Koenig*,
426 F.Supp.2d 1175 (D. Colo. 2006)............................................................................... 21

*Obeng v. Delaware State Police*,
No. Civ. A. 04-1248 (GMS), slip op., 2005 WL 1592951 (D. Del. July 7, 2005) .................. 18

iii

*Pennsylvania Ex rel. Zimmerman v. Pepsico, Inc.,*
    836 F.2d 173 (3d Cir. 1988) ............................................................................. 17

*Taddy v. Singh,*
    No. 1:04cv1051, slip op. (E.D. Va. Dec. 8, 2004) ................................................ 8, 26

*Toberman v. Copas,*
    800 F.Supp. 1239 (M.D. Pa. 1992) .................................................................... 17

## State Cases

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ............................................................................ passim

*Beam v. Stewart,*
    833 A.2d 961 (Del. Ch. 2003) .............................................................................. 5

*Beam v. Stewart,*
    845 A.2d 1040 (Del. 2004) .......................................................................... 6, 14, 15

*Boeing Co. v. Shrontz,*
    Civ. A. No. 11273, 1992 WL 81228 (Del. Ch. Apr. 20, 1992) ................................. 5, 20

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000) ............................................................................ passim

*Carauna v. Saligman,*
    Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ................................... 13

*Carnegie Int'l Corp v. Grant Thornton,*
    LLP, No. 24-C-00-002639, 2005 WL 851064 (Md. Cir. Ct. Apr. 6, 2005) ...................... 25

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.,*
    No. 133389, 1996 WL 506906 (Del. Ch. Sept. 3, 1996), aff'd, 692 A.2d 411 (Del.
    1997) ................................................................................................................ 22

*Decker v. Clausen,*
    Civ. A. Nos. 10,684, 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ........................ 13

*Dollens v. Zionts,*
    No. 01 C02826, 2002 WL 1632261 (N.D. Ill. July 22, 2002) ..................................... 25

*Fitzgerald, L.P. v. Cantor,*
    No. C.A. 16297, 1998 WL 326686 (Del. Ch. June 16, 1998) ..................................... 23

*Gagliardi v. TriFoods Int'l, Inc.,*
    683 A.2d 1049 (Del. Ch. 1996) ........................................................................ 5, 11

iv

*Green v. Phillips*,
   CA No. 14436, 1996 WL 342093 (Del. Ch. June 19, 1996) .......................................... 14

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ......................................................................................... 7

*Gunzl v. Spayd*,
   Civ. A. No. 93C-09-089, 1995 WL 160352 (Del. Super. Ct. Mar. 28, 1995) ............... 18

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ............................................................................. passim

*Haber v. Bell*,
   465 A.2d 353 (Del. Ch. 1983) .................................................................................... 11

*Halpern v. Barran*,
   313 A.2d 139 (Del. Ch. 1973) ................................................................................. 4, 5

*Highland Legacy Ltd. v. Singer*,
   No. Civ. A. 1566-N, 2006 WL 741939 (Del Ch. March 17, 2006) ............................ 15

*In re Baxter Int'l, Inc. S'holders Litig.*,
   654 A.2d 1268 (Del. Ch. 1995) ......................................................................... 9, 10, 12

*In re Caremark Int'l, Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ..................................................................................... 9

*In re Citigroup Inc. S'holders Litig.*,
   No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003)............................................. 8

*In re Dean Witter P'ship Litig.*,
   No. Civ. A. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ..................................... 5

*In re Frederick's of Hollywood, Inc.*,
   Civ. A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) .................................. 20

*In re Gen. Motors S'holder Litig.*,
   897 A.2d 162 (Del. 2006) .......................................................................................... 17

*In re J.P. Morgan Chase & Co.*,
   No. Civ. A. 531-N, 2005 WL 1076069 (Del. Ch. Apr. 29, 2005) ................................ 15

*In re Lukens Inc. S'holders Litig.*,
   757 A.2d 720 (Del. Ch. 1999) ............................................................................... 20, 21

*In re Oracle Corp. Deriv. Litig.*,
   867 A.2d 904 (Del. Ch. 2004) ..................................................................................... 7

v

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ................................................................................ 23

*Khanna v. McMinn*,
    No. Civ. A. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) ......................... 20

*Khoury Factory Outlets, Inc. v. Snyder*,
    No. 11,568, 1996 WL 74725 (Del. Ch. Jan. 8, 1996) ............................................... 23

*Leung v. Schuler*,
    No. C.A. 17089, 2000 WL 1478538 (Del. Ch. Oct. 2, 2000) ............................. 22, 24

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ........................................................................ 17, 20, 21

*Pogostin v. Rice*,
    480 A.2d 619 (Del. 1984) ...................................................................................... 13

*Prod. Resources Group, LLC v. NCT Group, Inc.*,
    863 A.2d 772 (Del. Ch. 2004) ............................................................................... 20

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ........................................................................... 6, 15, 16

*Rattner v. Bidzos*,
    No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...................... passim

*Sanders v. Wang*,
    No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) .......................................... 22

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) ............................................................................. 14

*Sills v. Smith & Wesson Corp.*,
    No. 99C-09-283-FSS, 2000 WL 33113806 (Del. Super. Ct. Dec. 1, 2000) ............... 23

*Tomczak v. Morton Thiokol, Inc.*,
    Civ. A. No. 7861, 1990 WL 42607 (Del. Ch. Apr. 5, 1990) .................................... 22

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ...................................................................................... 16

*White v. Panic*,
    793 A.2d 356 (Del. Ch. 2000) ............................................................................... 16

*Zupnick v. Goizueta*,
    698 A.2d 384 (Del. Ch. 1997) ......................................................................... 22, 23

## State Statutes

DEL. CODE ANN. tit. 10, §8106 ................................................................................................ 4

DEL. CODE ANN. tit. 8, § 220 ..................................................................................... 2, 4, 16

DEL. CODE ANN. tit. 8, §327 .................................................................................................... 4

DEL. CODE ANN., tit. 8, § 102(b)(7) .............................................................................. 19, 20

DEL. CODE ANN., tit. 8, § 157(b) ................................................................................... 22, 24

## Federal Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 19

Fed. R. Civ. P. 23.1 ............................................................................................................... 1

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 1, 17, 18

## Miscellaneous

James Bandler, *et al.*, *Criminal Probe of United Health Options Begins*, WALL ST. J.,
   May 18, 2006 at C1 ........................................................................................................ 3

Steven Syre, *Timing Is Everything*, BOSTON GLOBE, May 23, 2006, at E1 ....................... 3

## NATURE AND STAGE OF THE PROCEEDINGS

On May 31, 2006, Plaintiff filed this shareholder derivative action on behalf of nominal defendant RSA Security Inc. ("RSA" or the "Company") against certain RSA officers and directors on the ground that those officers and directors benefited from or were allegedly responsible for "backdating" and/or misaccounting for certain RSA stock option grants in 1999 and 2000.

Defendants have today filed a Motion to dismiss Plaintiff's Verified Shareholder Derivative Complaint pursuant to Rules 12(b)(6), 23.1, and 8(a)(2) of the Federal Rules of Civil Procedure. This is Defendants' Memorandum in support of the Motion.[1]

## SUMMARY OF ARGUMENT

Defendants submit that the Complaint should be dismissed for the following reasons:

- Plaintiff lacks standing to assert any claim with respect to the majority of the transactions in question because she challenges options grants made before she became an RSA stockholder;

- Plaintiff's action is time-barred under Delaware law because she initiated the action more than three years after the alleged misconduct occurred;

- Plaintiff never made pre-suit demand, as required by Delaware law, and the Complaint does not allege any fact (let alone the particularized facts mandated by Fed. R. Civ. P. 23.1) that would excuse demand;

- The allegations in the Complaint are too unclear even to satisfy Fed. R. Civ. P. 8(a)(2);

---

[1]    This motion is submitted on behalf of the following defendants: (1) the Company; (2) Arthur W. Coviello, Jr.; (3) Robert P. Badavas, Richard A. DeMillo, Richard L. Earnest, Taher Elgamal, William H. Harris, Jr., Gloria C. Larson, Joseph B. Lassiter, III, Orson G. Swindle, James K. Sims, and Charles R. Stuckey, Jr. (collectively, the "Independent Director Defendants"); and (4) John Adams, John F. Kennedy, Scott T. Schnell, and Joseph Uniejewski (collectively, the "Officer Defendants"). The term "Individual Defendants" refers to all defendants except the Company. "Director Defendants" refers collectively to the Independent Director Defendants and Mr. Coviello.

- The Company's charter extinguishes all claims premised on officers' and directors' purported violations of their duty of care;

- None of the individual counts in the Complaint states a claim on which relief could be granted; and

- Plaintiff does not plead a viable theory of damages.

Further, because Plaintiff did not conduct the pre-suit review of the Company's books and records as permitted by DEL. CODE ANN. tit. 8, § 220 (2006), dismissal should be with prejudice.

## STATEMENT OF FACTS

Plaintiff, an RSA shareholder since January 31, 2000 (Compl. ¶ 14), alleges that RSA—a Delaware corporation headquartered in Bedford, Massachusetts that develops and sells on-line security products (Compl. ¶¶ 34-35)—has misadministered its stock option program since October 13, 1999. The Complaint appears to be premised largely on a May 16, 2006 report by the Center for Financial Research and Analysis ("CFRA"), which used publicly-available information to analyze various companies' stock option grants. CFRA reviewed all 16 of RSA's stock option grants between 1997 and 2002 and identified three grants during those six years—in 1997, 1999, and 2000—that were close to 40-day lows in the Company's stock price and noted that those three grants were "at risk" of having been backdated. (Compl. ¶ 53.)[2] The CFRA report did not conclude that the supposedly suspicious grants in question were in fact backdated. (Dube Aff., Ex. 1 at 3.)

Following publication of the CFRA report, various newspapers published general articles on potential problems with various companies' stock option grants. Some of those articles mentioned RSA. (Compl. ¶¶ 53, 62.) None of the articles, however, provided any more detail

---

[2]    The CFRA report, "Options Backdating—Which Companies are at Risk?," is attached as Exhibit 1 of the Affidavit of Michael R. Dube ("Dube Aff.") filed herewith.

about RSA than what CFRA had already written.[3/]  The Company publicly disclosed both that it was one of the companies identified in the CFRA report and that it had been the subject of related government inquiries. (Compl. ¶ 60.)

Plaintiff's Complaint cites two out of the three option grant dates identified in the CFRA report, but adds three additional grant dates deemed not "at risk" by CFRA.[4/]  Beyond parroting the CFRA report's speculation that options might have been backdated, the Complaint also alleges that RSA inflated its income by failing to record, as ostensibly required by generally accepted accounting principles ("GAAP"), the supposed difference between the lower price of RSA common stock on the date to which the options had allegedly been backdated and the price on the date of the actual grant. (*See* Compl. ¶¶ 6, 42-43, 45-46, 50-51, 65, 80, 87-88, 99.) Although Plaintiff fails to identify the option grants supposedly misaccounted for, the amount of the alleged misaccounting, or the effect of the unspecified misaccounting on the Company's financial results, Plaintiff nevertheless contends that unidentified RSA financial results were misstated in indeterminate amounts as a result of the alleged backdating. (*See* Compl. ¶¶ 3, 48-51, 72, 74, 80, 82-83, 87-89.)

According to Plaintiff, the Individual Defendants participated in, benefited from, or approved both backdating unidentified option grants and misaccounting for them. (*See, e.g.,*

---

[3/]    The first of these articles explained that "[b]ackdating is not necessarily illegal in itself." James Bandler, *et al.*, *Criminal Probe of United Health Options Begins*, WALL ST. J., May 18, 2006 at C1. (Dube Aff., Ex. 2.) The second observed that "the picture [of whether anyone at RSA engaged in wrongdoing] isn't so vivid." Steven Syre, *Timing Is Everything*, BOSTON GLOBE, May 23, 2006, at E1. (Dube Aff., Ex. 3.)

[4/]    Specifically, the 1997 grant date identified in the CFRA report (*see* Dube Aff., Ex. 1 at 20) is not mentioned in the Complaint. Plaintiff, however, mentions grants made on October 13, 1999, October 19, 1999, and  November 18, 1999, which are not mentioned in the CFRA report. (Compl. ¶¶ 54-56, 58-59.) Separately, CFRA correctly noted that RSA made options grants on November 30, 2000. Defendants assume that it is those grants Plaintiff intends to refer to when she cites grants on November 29, 2000. (*See* Compl. ¶¶ 54, 57-59.)

Compl. ¶¶ 3, 50, 91.) Plaintiff, however, does not identify which, if any, Individual Defendants

were aware of the supposed backdating; nor does she explain why or how those who were not

aware of the alleged backdating should have known about it. Further, she does not explain

which Individual Defendants benefited from the alleged misconduct.

Before filing her Complaint, Plaintiff did not take advantage of her statutory right to

review the Company's books and records. *See* DEL. CODE ANN. tit. 8, § 220 (2006).

## ARGUMENT

**I.  Plaintiff Lacks Standing to Sue for Misconduct in Connection With All But One of the Challenged Stock Option Grants, and All Plaintiff's Claims Are Barred By the Relevant Statute of Limitations.**

According to her Complaint, Plaintiff first acquired RSA stock on January 31, 2000.

(Compl. ¶ 14.) She nevertheless challenges option grants made on four dates *before* she acquired

RSA stock. (*See* Compl. ¶¶ 54-59.) Plaintiff lacks standing to contest any of the grants that

occurred before she was a shareholder. *See* DEL. CODE ANN. tit. 8, §327 (2006) (in a derivative

suit, complaint shall aver that plaintiff was a stockholder of the corporation at the time of the

challenged transaction); *Blasband v. Rales*, 971 F.2d 1034, 1039 (3d Cir. 1992) (same).

Even assuming that Plaintiff has standing to sue for the misconduct alleged in her

Complaint, Delaware's three-year statute of limitations bars her suit. She is challenging options

grants from 1999 and 2000 (*see* Compl. ¶¶ 54-59), and her right to sue over those grants

therefore expired in 2002 and 2003, respectively. *See* DEL. CODE ANN. tit. 10, §8106 (2006)

("no action to recover damages … caused by an injury unaccompanied with force or resulting

indirectly from the act of the defendants shall be brought after … three years"); *see also Halpern*

*v. Barran*, 313 A.2d 139, 141 (Del. Ch. 1973) (citation omitted) (three-year statute of limitations

applies to shareholder derivative actions); *Boeing Co. v. Shrontz*, Civ. A. No. 11273, 1992 WL

81228, at \*2 (Del. Ch. Apr. 20, 1992) (citation omitted) (same); *In re Dean Witter P'ship Litig.*,

No. Civ. A. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) (three-year statute of limitations applies to claims of breach of fiduciary duty). The Complaint must therefore be dismissed. *See Dean Witter*, 1998 WL 442456, at *9 (dismissing time-barred claims); *Boeing*, 1992 WL 81228, at *3 (same); *Halpern*, 313 A.2d at 144 (same).

## II.     The Complaint Should Be Dismissed Because Plaintiff Fails as a Matter of Law To Adequately Plead Demand Futility.

Because "directors, rather than shareholders, manage the business and affairs of the corporation," *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000), a plaintiff may file a derivative suit only if she demonstrates that the corporation either refused or would have refused "to proceed after suitable demand" on the corporation's board of directors. *Kamen v. Kempner Fin. Servs. Inc.*, 500 U.S. 90, 101 (1991) (citation omitted) ("[D]ecisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders.").

This "demand requirement" is a "substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation . . . ." *Aronson*, 473 A.2d at 809. Consequently, the obligation to make demand is a "stringent requirement[]" that is not excused on the basis of "conclusory statements or mere notice pleading." *Brehm v. Eisner*, 746 A.2d at 254; *see also Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1055 (Del. Ch. 1996) (plaintiff failed to satisfy "the more onerous [standards] of Rule 23.1"); *Beam v. Stewart*, 833 A.2d 961, 976 (Del. Ch. 2003) (hereinafter "*Beam I*") ("Rule 23.1 . . . confers substantive rights that result in derivative complaints being subjected to more stringent pleading requirements" than Rule 12(b)(6). In order to survive a motion to dismiss for failure to make demand, plaintiffs must

- 5 -

therefore set forth "*particularized* factual statements" explaining why demand would have been futile. *Brehm*, 746 A.2d at 254 (emphasis added).

The assessment of whether pre-suit demand is excused begins with a presumption that the directors would have satisfied their fiduciary duties had Plaintiffs made pre-suit demand. *See Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (hereinafter "*Beam II*"); *see also Aronson*, 473 A.2d at 812, 815. In cases challenging a specific board decision or transaction, a plaintiff seeking to excuse demand must allege with particularity that reasonable doubt exists either: (1) that a majority of the current board is disinterested and independent or (2) that the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814. Where, by contrast, a derivative suit challenges the board's *failure* to do something, the second element is replaced with an inquiry into whether the pleadings call into question "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). The Complaint in this case fails to satisfy any of these standards.

### A.    The Board is Disinterested and Independent.

In this case, Plaintiff does not allege any individualized reasons that particular Director Defendants would be unable to assess demand. Without reference to particular facts implying that any specific Director Defendant should be disqualified from considering demand, she pleads that the Board is collectively tainted. (*See, e.g.*, Compl. ¶ 80.) Plaintiff's undifferentiated pleadings are particularly out of place here, given that: (1) 9 of the Board's 10 current directors are outsiders; (2) 8 of the 10 Defendants who are current directors are not alleged to have received any tainted options; and (3) 4 of the 10 Director Defendants were not even Board members when the options backdating allegedly occurred. (*See* Compl. ¶¶ 16, 18, 24-32.) Plaintiff's conclusory allegations do not establish a reasonable doubt that any of the Director

- 6 -

Defendants—let alone a majority of them—would be unable to impartially consider a demand either as a consequence of the risk of personal liability or because of some financial, personal, or other interest. *See Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996), *overruled in part on other grounds by Brehm*, 746 A.2d at 253-54 (citation omitted). The Complaint should be dismissed because Plaintiff fails to meet the burden of *specifically* alleging facts rebutting a *majority* of the Direct Defendants' presumptive disinterest and independence. *See Aronson*, 473 A.2d at 815-16.

> **1.    Plaintiff's Allegation that Suspicious Stock Options Were Granted in 1999 and 2000 Does Not Imply that the Two Directors Who Received the Grants Are Interested.**

Plaintiff contends that, on two separate dates (one in 1999 and another in 2000), the Company granted stock options to two directors (Mr. Coviello in 1999 and 2000 and Mr. Stuckey in 1999) and that the price of RSA stock rose soon after those two grants.[5/] (*See* Compl. ¶¶ 54-55.) Because Messrs. Coviello's and Stuckey's mere receipt of options grants before RSA's stock price rose implies nothing about the context of the grants, neither Mr. Coviello nor Mr. Stuckey—let alone any Director Defendant not even alleged to have received tainted options grants—should be deemed interested. *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003) (reviewing chart of stock sales and holding that demand was not excused); *see also In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 953-55 (Del. Ch. 2004) (dismissing with prejudice derivative action asserting insider trading on finding that defendants neither possessed

---

[5/]    Any rise in RSA's stock price after stock option awards to the Officer Defendants (*see* Compl. ¶¶ 56-59) is irrelevant to the demand futility inquiry, which concerns only the impartiality of the Company's Board. *See, e.g., Guttman v. Huang*, 823 A.2d, 492, 503 n.22 (Del. Ch. 2003) ("[T]hat three non-director defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason: they are not on the board."); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *9 n. 47 (Del. Ch. Oct. 7, 2003) ("[F]or purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant.").

material, nonpublic financial information at the time of their trades nor acted with scienter); *see also Taddy v. Singh*, No. 1:04cv1051, slip op. at 12 (E.D. Va. Dec. 8, 2004) (Dube Aff., Ex. 5) (refusing to adopt *per se* rule that director's sale of stock at profit is sufficient to render director "interested" for demand futility purposes); *Rattner,* 2003 WL 22284323, at *11 (rejecting notion that director is by definition interested on basis of sale of company stock when in possession of material, non-public information).

### 2. Plaintiff's Allegations of Misaccounting Do Not Render the Majority of the Board Interested.

Plaintiff contends that RSA misaccounted for backdated options because it did not expense the difference between the (presumably lower) price at which the stock was trading on the day of the putative grant and the (presumably higher) price at which it was trading on the day when backdating supposedly occurred. (*See* Compl. ¶ 6.) Further—according to Plaintiff—the Director Defendants' complicity in, endorsement of, or inadequate attention to this supposed misaccounting renders them interested. (*See id.* ¶ 80.)

*First*, and most importantly, "[e]ntirely absent from the [C]omplaint are well-pled, particularized allegations of fact detailing the precise roles that [the] directors played at the [C]ompany, the information that would have come to their attention in [their] role, and any indication as to why [they] would have perceived the accounting irregularities." *Guttman*, 823 A.2d at 503.[6/] Plaintiff therefore fails to plead that any supposed misaccounting involves the Director Defendants.

---

[6/]     *See also, e.g., In re Citigroup Inc. S'holders Litig.*, No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) (refusing to excuse demand where complaint lacked particularized facts to support allegations that directors either knew or should have known about alleged corrupt and illegal practices or that directors knew or should have known that there were material inadequacies in corporation's internal controls); *Rattner*, 2003 WL 22284323, at *11 (concluding that in complaint alleging defendants inadequately maintained accounting controls and utilized improper accounting and auditing practices, plaintiff failed to plead that majority of board was

*Second*, Plaintiff offers no basis to believe that the accounting for any of the options grants was, in any event, wrong. She instead (1) assumes without basis that some options were backdated, (2) extrapolates that backdated options were likely misaccounted for, (3) posits without analysis that the unspecified misaccounting was material and will prompt restatement of prior periods' financial statements, and (4) concludes without alleging any particularized facts that the Defendants—and in particular the Audit Committee members[7]— breached their fiduciary duties to RSA by failing to monitor the Company's financial reporting. (*See* Compl. ¶ 80.) The Director Defendants remain disinterested, given that their "potential liability is [] a mere threat ... [that does not] rise to a substantial likelihood." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1269 (Del. Ch. 1995) (citation omitted).

*Third*, to the extent Plaintiff intends that her allegations concerning the Company's supposed misaccounting for options grants imply "a sustained or systematic failure of the board to exercise oversight," *Guttman*, 823 A.2d at 506 (*see* Compl. ¶ 80),[8] the Complaint offers no basis to infer that the Director Defendants were aware of any deficiencies. *See id.* at 507. Claims premised on supposed control deficiencies cannot succeed absent particularized

---

interested where "[t]he Amended Complaint allege[d] general knowledge in a conclusory fashion on behalf of the Director Defendants, explained solely by virtue of their service in various capacities").

[7]    As Plaintiff concedes, Mr. Elgamal is no longer a member of the RSA Board. (Compl. ¶ 32.) Accordingly, his alleged conduct as a member of the Audit Committee in the past is irrelevant to assessing whether demand would have been futile. *Blasband*, 971 F.2d at 1048 (citations omitted) (noting that disinterestedness and independence inquiry focuses on board in place when complaint is filed).

[8]    A claim premised on a board's failure to identify and remedy controls deficiencies is often referred to as a "*Caremark* claim." *See In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996). A *Caremark* claim " is one of, if not the, most difficult theories upon which to prevail." *Rattner*, 2003 WL 22284323, at *12 (citing *In re Caremark*, 698 A.2d at 967).

allegations "that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." *Id.* at 507.  Plaintiff alleges none of that; to the contrary, she makes only boilerplate accusations.  (*See, e.g.,* Compl. ¶ 80.)  Courts routinely reject such claims as a ground to excuse demand because they do not demonstrate "substantial likelihood of personal liability" that would preclude the exercise of independent judgment.  *In re Baxter*, 654 A.2d at 1271.

### 3.    Plaintiff's Allegation of False or Misleading Public Statements Regarding the Company's Stock Option Plans Is Not Properly Pled.

According to the Complaint, RSA made false or misleading statements concerning "the stock option plan . . . published in the Company's Definitive Proxy Statement(s) and incorporated by reference each year in the Company's Annual Reports on Form 10K," and "executive compensation including stock option grants . . . disclosed in the Company's yearly proxy statements."  (*See* Compl. ¶ 74.)  Plaintiff's allegation that Company statements were false, however, depends on the wholly unsubstantiated premise that RSA backdated options.  *See infra* pp. 16-18 (explaining that the Complaint does not satisfy the standards for notice pleading).

Plaintiff never alleges which RSA stock option grants, if any, were in fact backdated or which RSA officers and directors authorized or received improper grants.  Plaintiff instead premises her claim on a single "analyst" report that identifies stock option grants made at or near market lows in RSA's stock price and that notes those grants were "at risk" of having been backdated.  (Compl. ¶ 53.)  Neither that report nor any other document cited in the Complaint, however, states that any RSA stock options—including those discussed in the report and those mentioned in the Complaint—was actually backdated or misaccounted for.  Additionally, the Complaint does not allege—and none of the documents on which it relies establishes—that any

- 10 -

of the Company's more than 30 other grants over the past seven years occurred at or near market lows, let alone that any were backdated or misaccounted for.

Further, even assuming some RSA statement was false, Plaintiff has pled no facts whatsoever concerning the role any individual Defendant played in the issuance of any supposedly false statement. Indeed, Plaintiff has pled no specific facts to show that any Defendant at any time had reason to know that any of RSA's statements were false or misleading. *See Rattner*, 2003 WL 22284323, at *12-13 (demand not excused where claim that defendants "should have been on notice of…alleged misstatements" was not supported by particular facts regarding board's involvement in preparing the statements or demonstrating board's awareness of possible financial irregularities); *Guttman*, 823 A.2d at 505-507 (demand excusal not warranted where complaint failed to plead that defendants had notice of or reason to know of accounting irregularities and resulting misstatements).

### 4. Plaintiff's Allegations that the Directors "Participated" in Wrongdoing Fail to Establish a Director Interest.

Plaintiff makes repeated allegations that the Director Defendants "participated in," "approved of," or "acquiesced in" Defendants' supposed wrongdoing (*see, e.g.,* Compl. ¶¶ 43, 80), but such conclusory pleading does not excuse demand. *See, e.g., Aronson*, 473 A.2d at 817-18 (holding that allegation that Board members "approved" of or "participated in, expressly approved and/or acquiesced in, and are personally liable for, the wrongs complained of herein" did not allow plaintiff to avoid demand); *Haber v. Bell*, 465 A.2d 353, 359 (Del. Ch. 1983) (finding claim that board "approved or acquiesced" in challenged action insufficient to excuse demand); *Gagliardi*, 683 A.2d at 1055 ("[I]t is well established that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not" excuse demand.).

- 11 -

### 5.    Mere Service on Committees Does Not Mean Directors Face a Substantial Likelihood of Personal Liability.

Plaintiff's recitation of the routine roles of various Board committees, coupled with the allegation that certain Director Defendants' mere service on particular committees subjects them to a substantial likelihood of personal liability, does not render the Director Defendants interested. (*See* Compl. ¶ 80.)[9/] *See, e.g., Kanter v. Barella*, 388 F.Supp.2d 474, 480-81 (D.N.J. 2005) (declining to find directors interested where plaintiff alleged "in broad terms" that defendants knew of allegedly unlawful billing scheme "by virtue of their position within the corporation"); *Rattner*, 2003 WL 2284323, at *11 (declining to find directors interested where "[t]he Amended Complaint alleges general knowledge in a conclusory fashion on behalf of the Director Defendants, explained solely by virtue of their service in their various capacities"). Rather, Plaintiff's "claim of director culpability [] is conclusory . . . . [T]he Complaint does not plead with particularity what obvious danger signs were ignored or what additional measures the directors should have taken. [One therefore] cannot conclude from the face of the complaint that this is a rare case where the circumstances are so egregious that there is a substantial likelihood of liability." *In re Baxter*, 654 A.2d at 1271 (citation omitted).

### 6.    Conclusory Allegations That Defendants Would Not Sue Themselves Do Not Demonstrate Interest Sufficient to Excuse Demand.

The Complaint alleges that the Director Defendants are interested because "in order to bring this suit, all the RSA Security Defendants would be forced to sue themselves…, which they will not do." (Compl. ¶ 80.) Courts have consistently held, however, that "a plaintiff may

---

[9/]    Plaintiff's demand futility allegations center on the following committees and their members: Audit (Messrs. Badaval, Earnest, Elgamal and Ms. Larson); Compensation (Messrs. Sims, Demillo and Elgamal and Ms. Larson); and Governance and Nominating (Messrs. Lassiter, Sims, Coviello, Stuckey and Ms. Larson). (*See* Compl. ¶80.) Mr. Elgamal is no longer on the board, as Plaintiff concedes. (*See* Compl. ¶ 32.) Accordingly, he is irrelevant to the demand futility analysis. *See supra* n. 6.

- 12 -

not bootstrap allegations of futility merely by pleading that the directors . . . would be reluctant to sue themselves." *Blasband*, 971 F.2d at 1049 (citation omitted); *see Pogostin v. Rice*, 480 A.2d 619, 625 (Del. 1984), *overruled in part on other grounds by Brehm*, 746 A.2d at 253-54 (noting demand not excused based on directors' alleged reluctance to sue themselves) (citing *Aronson*, 473 A.2d at 818).

Plaintiff's companion argument—that Defendants would not bring suit because they *might* lose their insurance coverage, and thereby be subject to personal liability (*see* Compl. ¶ 80)—is equally unavailing because it is just a variation "on the 'directors suing themselves' and 'participating in the wrongs' refrain." *Carauna v. Saligman*, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (demand not excused when "liability insurance has a typical exclusion from coverage of claims brought by [Company] against its directors") (*quoting Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)).

### 7.    Plaintiff Fails to Allege Particularized Facts Establishing That Any Director Lacks Independence.

Plaintiff contends that a majority of the board is not independent because: (1) unspecified Defendants have "extensive inter-related business, professional and personal entanglements" and have thereby developed "debilitating conflicts of interest" (*see* Compl. ¶ 80); and (2) Defendants participated in supposed wrongdoing and therefore lack "sufficient independence" (*see id.*).

A director is independent unless he is beholden to or dominated and controlled by, other interested Defendants. *See Guttman*, 823 A.2d at 501-02 (independence requirement requires that directors be independent only from others "found to be interested" themselves); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (a director must be free from the "influence of

- 13 -

other interested persons"). At the threshold, Plaintiff has not pled that any Director Defendant is interested. *See Brehm,* 746 A.2d at 258 (unnecessary to determine whether directors are independent from purported controller if plaintiff fails to show that purported controller himself is interested).

Even assuming that the Complaint had pled with sufficient particularity that one or more of the Director Defendants was interested, Plaintiff has not pled that a majority of the Director Defendants would be more willing to risk their own reputations than they would be to sue wrongdoers. *See Beam II*, 845 A.2d at 1051-52 (even friendships that preceded board membership and did not arise from board service were insufficient to show directors were not independent); *Green v. Phillips*, CA No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996) (allegations that directors had "longstanding personal and business ties . . . are insufficient to overcome the directors' presumption of independence"). Indeed, Plaintiff provides *no* factual elaboration regarding any alleged "entanglements" involving any of the 10 Director Defendants; there is therefore no basis to conclude that any Director Defendant would be "more willing to risk his or her reputation than risk the relationship." *Beam II*, 845 A.2d at 1052 (citations omitted).

> ### B. Plaintiff Pleads Neither Reasonable Doubt that the Challenged Options Grants Were Other Than a Valid Exercise of Business Judgment Nor that the Board Could Not Impartially Consider Demand.

Plaintiff at times appears to challenge specific Board conduct (*see e.g.*, Compl. ¶¶ 9, 73, 75); at other times, she seems to argue only that the Board failed to prevent or correct others' misconduct (*see e.g.*, *id.* ¶¶ 5, 9, 75, 80). In the former case, demand would be excused if the Complaint were to create a reasonable doubt whether the challenged option grants were a valid exercise of the Board's business judgment. *See Aronson*, 473 A.2d at 814. In the latter case, Plaintiff must instead set forth particularized allegations raising a reasonable doubt whether the

present Board could impartially consider the merits of Plaintiff's demand. *Rales*, 634 A.2d at

934. Plaintiff fails under either standard.

>    **1.    Plaintiff Fails to Create a Reasonable Doubt that the Challenged
>    Option Grants Were Other Than a Valid Exercise of Business
>    Judgment.**

Plaintiff has not "alleged [facts] which even suggest that the [ ] directors' actions were

not in the best interests of the corporation except that plaintiffs think they are not." *A.R.*

*Demarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, No. Civ. A. 19133-NC, 2002 WL

31820970, at *5-6 (Del. Ch. Nov. 26, 2002 revised Dec. 4, 2002) (granting motion to dismiss

under business judgment prong of *Aronson*). In connection with the challenged options grants,

Plaintiff has pled with particularity neither that the Director Defendants engaged in bad faith or

dishonesty nor that they failed to become informed. Demand therefore should not be excused.

*See In re J.P. Morgan Chase & Co.*, No. Civ. A. 531-N, 2005 WL 1076069, at *11-12 (Del. Ch.

Apr. 29. 2005) (demand not excused where plaintiffs failed to plead particularized facts

suggesting any individual defendant director acted without honesty and good faith); *Highland*

*Legacy Ltd. v. Singer*, No. Civ. A. 1566-N, 2006 WL 741939, at *7 (Del Ch. Mar. 17, 2006)

(allegations that directors were paid "exorbitant" fees not sufficient to excuse demand).

>    **2.    Neither the Board's Alleged Role in the Stock Options Grants in
>    Question Nor Any Other Factor Calls Into Question the Board's
>    Impartiality.**

Because the Complaint does not contend that a majority of the Director Defendants either

would receive disproportionate benefit from not initiating suit or would suffer a disproportionate

harm were suit initiated, the Board's impartiality is not subject to question. *See Rales*, 634 A.2d

at 934, 936. Plaintiff alleges, at most, that 2 of the 10 relevant directors received personal

financial benefits from backdated options. (*See* Compl. ¶¶ 54-55.) And, even in those two

Directors' cases, the Complaint does not establish "a substantial likelihood" that either of them

- 15 -

would be liable for anything. (*See supra* section II.A.1.) Thus, Plaintiff offers no basis to question whether the Director Defendants would assess demand on the basis of the "'corporate merits of the subject before the board rather than extraneous considerations or influences.'" *Rales*, 634 A.2d at 936 (*quoting Aronson*, 473 A.2d at 816).

### C.    Plaintiff's Decision to Base Her Complaint on Newspaper Stories, Rather Than Thorough Inquiry, Requires that Dismissal Be With Prejudice.

Plaintiff's conclusory allegations appear to be a consequence of her rushing to court without either conducting any independent analysis or waiting for the dust around the current options grants tempest to settle. *White v. Panic*, 793 A.2d 356, 365, 371-72 (Del. Ch. 2000) (dismissing with prejudice and noting counsel may rely on media accounts, but their utility is "limited and hardly relieves a plaintiff of the responsibility addressed in *Rales* of using 'tools at hand' to engage in further investigation"); *Rales*, 634 A.2d at 935 n.10 (surmising that failure to use books and records device of DEL. CODE ANN. tit. 8, § 220 (2006) results from "unseemly race to the court house"). Plaintiff was obliged to but did not "proceed deliberately and [] use the books and records device [provided by DEL. CODE ANN. tit. 8, § 220] to gather materials necessary to prepare a solid complaint." *Guttman*, 823 A.2d at 504; *see Brehm*, 746 A.2d at 249 (plaintiffs' reliance on media reports, which "simply echo plaintiffs' conclusory allegations" served "no purpose other than to complicate the work of reviewing courts"). Dismissal of the Complaint should therefore be with prejudice. *See White v. Panic*, 783 A.2d 543, 557 (Del. 2001) (affirming dismissal with prejudice in light of plaintiff's failure to make appropriate pre-suit investigation "even if [complaint was] based on a good faith belief that the allegations in the complaint were sufficient under Rule 23.1").

- 16 -

**III.    Even if Demand Were Excused, the Complaint Should be Dismissed.**

Even if demand were excused, Plaintiff's Complaint fails to state a claim on which relief could be granted.

**A.    The Complaint Does Not Satisfy Fed. R. Civ. P. 8(a)(2).**

Plaintiff's Complaint questions the propriety of certain stock options grants but offers no basis to believe that they were either backdated or misaccounted for. She instead relies wholly on a report that speculated RSA's options were "at risk" of having been backdated. (*See* Compl. ¶ 53.) Plaintiff's allegations therefore do not satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2) because they fail to provide Defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Pennsylvania Ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) (same).

"Implicit in the Supreme Court's interpretation [of Rule 8] is the notion that the [federal] rules [] contemplate a statement of circumstances, occurrences, and events in support of the claim being presented; however general." *Toberman v. Copas*, 800 F.Supp. 1239, 1243 (M.D. Pa. 1992); *Allied Corp. v. Frola*, 701 F.Supp. 1084, 1087 (D.N.J. 1988) (same) (citing C. Wright & A. Miller, Federal Practice and Procedure § 1215, at 112-13 (1969 & Supp. 1987)). In this case, the Complaint never identifies the "circumstances, occurrences, and events" underlying Plaintiff's claim that Defendants "caused or allowed . . . . backdating of . . . . stock options." (Compl. ¶¶ 5-6.)[10/]

Indeed, the Complaint is more notable for what it lacks than for what it alleges:

---

[10/]    Moreover, when reviewing a motion to dismiss, "a trial court is required to accept *only* those '*reasonable* inferences that logically flow from the face of the complaint.'" *In re Gen. Motors S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (*quoting Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (emphasis added).

1. The Complaint does not plead facts that support a reasonable inference that any option has been backdated;

2. It does not identify any specific instance in which an option was accounted for inappropriately;

3. Even assuming some misaccounting of options, the Complaint identifies neither when the misaccounting took place nor which financial statements were affected nor the supposed error's materiality to the financial statements; and

4. Plaintiff never identifies which Board members knew of (a) the backdating of unidentified options, (b) the misaccounting for of unidentified options, and (c) the effect of the misaccounting on the Company's financial statements.

Worse however, Plaintiff baselessly extrapolates from those few grants identified in the Complaint (Compl. ¶¶ 54-59) that the Defendants must have engaged in a long-running practice of backdating and misaccounting for stock options grants. (*See* Compl. ¶¶ 64, 69, 70.)

Plaintiff at most pleads that RSA *may have* backdated options granted on five days in 1999 and 2000. Rank speculation, however, does not satisfy Fed. R. Civ. P. 8(a)(2). *See Obeng v. Delaware State Police*, No. Civ. A. 04-1248 (GMS), slip op., 2005 WL 1592951, at *3 (D. Del. July 7, 2005) (dismissing plaintiff's claims that defendants "might" have violated law where claims were "framed in the potential as either 'may have' or 'strongly suspect that'"). Because Plaintiff relies on no more than recycled and indeterminate speculation, she has not provided Defendants with notice of the grounds on which her suit rests, and her suit should be dismissed. *See Gunzl v. Spayd*, Civ. A. No. 93C-09-089, 1995 WL 160352, at *5 (Del. Super. Ct. Mar. 28, 1995) (dismissing claim where complaint contained "no supporting factual averments which, if proven, would demonstrate" violation).

- 18 -

**B.**      **Individual Counts of the Complaint Fail to State a Claim on Which Relief Can Be Granted.**

**1.**      **Plaintiff's 14(a) Claim Must Be Dismissed Pursuant to Rule 12(b)(6).**

Plaintiff's claim in Count I under Section 14(a) of the Securities Exchange Act must be dismissed because the law of this Circuit bars proxy misstatement claims that allege no more than that the alleged misstatement or omission would have influenced shareholders' votes for directors. *See Gen'l Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (dismissing 14(a) claim under Fed. R. Civ. P. 12(b)(6) because directors' election does not create any cognizable harm where shareholders' election votes did not authorize transactions that caused alleged losses); *see also Gannon v. Continental Ins. Co.*, 920 F.Supp. 566, 583-84 (D. Del. 1996) (dismissing 14(a) claim alleging election proxies were direct cause of continued mismanagement resulting in losses). Plaintiff does not allege that shareholder proxies were necessary to authorize the tainted options grants (*see* Compl. ¶¶ 82-83), and her 14(a) claim is therefore indistinguishable in any material respect from the claims dismissed in *General Electric* and *Gannon*.

**2.**      **RSA's Exculpatory Clause Bars Plaintiff's Claims that Board Members Breached Their Duty Of Care and Engaged in Gross Mismanagement.**

As permitted by DEL. CODE ANN., tit. 8, § 102(b)(7), RSA's shareholders waived any claims the corporation could have against the Defendant Directors for any breaches of their duty of care. Because Counts II and III of the Complaint lack any factual assertions reasonably implying bad faith or knowing violations of law by any of the Director Defendants, they allege nothing more than that the Director Defendants at most breached their duty of care.[11] Given the

---

[11]      *See In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999) (stating that the function of § 102(b)(7) is to "preclude plaintiffs from pressing claims of breach of fiduciary duty, absent the most basic factual showing (or reasonable basis to infer) that the directors'

Company's exculpatory clause, those counts must therefore be dismissed. *See Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2001) (upholding dismissal of derivative action alleging breach of duty of care by gross negligence on basis of exculpatory charter provision); *In re Frederick's of Hollywood, Inc.*, Civ. A. No. 15944, 2000 WL 130630, at *6 n.12 (Del. Ch. Jan. 31, 2000) ("It is well established Delaware law that an exculpatory provision in a certificate of incorporation . . . shields the corporation's directors against a judgment for money damages" for breach of duty of care) (internal quotations omitted).

In Counts II and III, the Complaint alleges that Defendants mismanaged the Company's affairs (*see* Compl. ¶ 3) and breached their fiduciary duties of loyalty and care (*see* Compl. ¶ 87). [12/] The Complaint never alleges what any Director Defendant knew, saw, or did that would or should have caused him or her to realize that options were supposedly backdated or that stock option grants were not accounted for properly. There is therefore no basis in the Complaint to believe that "that the [Director Defendants'] conduct was the product of bad faith, disloyalty or one of the other exceptions [to the permissible scope of an exculpatory clause]." *In re Lukens*,

_____

conduct was the product of bad faith, disloyalty or one of the other exceptions listed in the statute").

[12/]     In Count II, Plaintiff also alleges breaches of the duties of "reasonable inquiry," "oversight," "good faith," and "disclosure." (*See* Compl. ¶ 87.) To the extent the law recognizes fiduciary duties of "reasonable inquiry" and "oversight," they are subsumed in the duty of care. *See Boeing Co. v. Shrontz*, Civ. A. No. 11273, 1992 WL 81228, at *1 (Del. Ch. Apr. 20, 1992) (characterizing the "fiduciary duty of control or oversight" as "more generally, the duty of due care"); *Prod. Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 798 (Del. Ch. 2004) (exculpatory charter barred claims that "explicitly attempt[ed] to state a due care claim against defendant-directors for mismanagement and inadequate oversight"). Meanwhile, any alleged lack of "good faith," is discussed in this section in connection with Plaintiff's failure to allege facts indicating a breach of the duty of loyalty. Finally, to the extent Plaintiff grounds her fiduciary duty claim on an alleged breach of the duty of disclosure (*see* Compl. ¶ 87), the claim also fails. It is well-settled that boards of directors are "not required to 'confess to wrongdoing prior to any adjudication of guilt,' nor must [they] 'draw legal conclusions implicating [themselves] in a breach of fiduciary duty from surrounding facts and circumstances prior to formal adjudication of the matter.'" *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *29 (Del. Ch. May 9, 2006) (citation omitted) (dismissing disclosure claims).

- 20 -

757 A. 2d at 734. As a consequence, the Complaint at best asserts that certain Director

Defendants breached their duty of care or committed gross negligence. *See Kenney v. Koenig,*

426 F.Supp.2d 1175, 1182 (D. Colo. 2006) (applying Delaware law and analyzing claim based

on "failure to implement effective internal financial and accounting controls" as alleging breach

of duty of care); *Guttierrez v. Logan*, No. Civ. A. H-02-1812, 2005 WL 2121554, at *8-10 (S.D.

Tex. Aug. 31, 2005) (applying Delaware law and analyzing claim based on failure to ensure that

"proper controls were in place," "responsib[ility] for monitoring the quality and integrity of the

[c]ompany's financial reporting process," and "recommend[ing] to the [b]oard that the

company's improper financial statements be included in the [c]ompany's [a]nnual [r]eport and

filed with the SEC" as alleging breach of duty of care).

RSA's corporate charter includes an exculpatory clause, which provides in pertinent part:

> Except to the extent that the General Corporation Law of the State of
> Delaware prohibits the elimination or limitation of liability of directors for
> breaches of fiduciary duty, no director of the Corporation or its
> stockholders shall be personally liable to the Corporation or its
> stockholders for monetary damages for any breach of fiduciary duty as a
> director, notwithstanding any provision of law imposing such liability.

*See* Third Restated Certificate of Incorporation of Security Dynamics Technologies, Inc., art. 8.

(Dube Aff., Ex. 4.)[13] Because the Complaint alleges at most breaches of the duty of care,

Counts II and III must be dismissed. *See, e.g., Malpiede*, 780 A.2d at 1094 (upholding 12(b)(6)

dismissal of derivative claim for breach of duties of loyalty and care and gross negligence on

basis of exculpatory charter provision where allegations only supported duty of care claim);

---

[13]     On September 10, 1999, Security Dynamics Technologies, Inc., changed its name to RSA
Security Inc. (Dube Aff., Ex. 4.)

*Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb*, 385 F.Supp.2d 449, 464 (D. Del. 2004) (dismissing claim for "gross negligence" based on exculpatory clause).[14]

### 3.     Plaintiff Fails to State a Claim of Corporate Waste.

Count IV of the Complaint must be dismissed because Plaintiff does not allege, as required by Delaware law, that no reasonable person could conclude that RSA received "*no consideration*" for the allegedly backdated options. *See Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *10 (Del. Ch. Nov. 8, 1999); *Zupnick v. Goizueta*, 698 A.2d 384, 387 (Del. Ch. 1997) (citation omitted) (pleading standard "very rarely satisfied by a shareholder plaintiff, because, if under the circumstances any reasonable person *might* conclude that the [action] made sense, then the judicial inquiry ends").

"In the absence of actual fraud in the transaction, the judgment of directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be *conclusive*." DEL. CODE ANN., tit. 8, § 157(b) (2006) (emphasis added). Because Plaintiff has not pled actual fraud in the issuance of any RSA stock options, consideration is presumed, and the Count must be dismissed. *See Leung v. Schuler*, No. C.A. 17089, 2000 WL 1478538, at *5-6 (Del. Ch. Oct. 2, 2000). "Only where it is claimed that the issuance of shares or options was *entirely without consideration* will § 157 not operate as 'a legal barrier to any claim for relief as to an illegal gift or waste of corporate assets in the issuance of stock options.'" *Id.* at *5 (quoting *Zupnick*, 698 A.2d at 387) (emphasis added).

### 4.     Plaintiff Fails to State a Claim for Unjust Enrichment.

---

[14]     Delaware courts treat claims of "gross mismanagement" as claims of "gross negligence." *See Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, No. 13389, 1996 WL 506906, at *14 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997) (citing *Tomczak v. Morton Thiokol, Inc.*, Civ. A. No. 7861, 1990 WL 42607 (Del. Ch. Apr. 5, 1990)). *See also Edgecomb*, 385 F.Supp.2d at 452, 464 (analyzing allegation of gross negligence and mismanagement as covered by exculpatory clause).

Plaintiff alleges in Count V that Messrs. Adams, Coviello, Kennedy, Schnell, Stuckey, and Uniejewski (the "Options Defendants") received supposedly backdated options and therefore "have been and will continue to be unjustly enriched at the expense of, and to the detriment of, the Company." (Compl. ¶ 102.) The count, however, should be dismissed, as Plaintiff fails to plead (1) that the Options Defendants were enriched; (2) that the Company has been impoverished; and (3) that the grants—even if backdated—were unjustified. *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999); *Fitzgerald, L.P. v. Cantor*, No. C.A. 16297, 1998 WL 326686, at *5 (Del. Ch. June 16, 1998); *Khoury Factory Outlets, Inc. v. Snyder*, No. 11,568, 1996 WL 74725, at *11 (Del. Ch. Jan. 8, 1996).

Assuming that options grants were backdated, Plaintiff does not contend that they were exercised. To the contrary, Plaintiff alleges that the options RSA grants to its officers and employers vest in installments over four to five years after they are granted (*see* Compl. ¶ 7), that the options at issue were granted in 1999 and 2000 (*see* Compl. ¶¶ 54-59), and that the Options Defendants have not exercised *any* options since 2000 (*see* Compl. ¶¶ 17-22.). Thus, the Options Defendants have not yet not derived any benefit from the supposedly tainted grants, and Plaintiff therefore has not alleged any enrichment. *See Sills v. Smith & Wesson Corp.*, No. 99C-09-283-FSS, 2000 WL 33113806, at *7 (Del. Super. Ct. Dec. 1, 2000) (granting motion to dismiss where plaintiff failed to allege benefit conferred to defendant).

Nor has Plaintiff pled any detriment to RSA from allegedly backdating options. As Plaintiff explains, "[w]hen an employee exercises an option, he or she purchases the stock from the company at the exercise price." (Compl. ¶ 4.) Until that time, the company has not suffered an actual detriment. Plaintiff's effort to convert a theoretical difference between the exercise price and the current price at which the Company's stock trades into a detriment is premature and

- 23 -

speculative. Nor does Plaintiff's reference to supposed misstatements in RSA's financial statements reflect a "detriment" to the Company. According to Plaintiff, GAAP required that the Company recognize an expense in connection with the backdated options, and that expense would have diminished the Company's earnings in the affected period. (*See* Compl. ¶¶ 3, 6.) Thus, Plaintiff alleges, RSA's profits were overstated (though Plaintiff never suggests when that occurred, the magnitude of the overstatement, or its materiality to RSA's financial results) and the challenged grants "*may* result in a restatement of" the Company's financial results "going back several [unspecified] fiscal years." (*See* Compl. ¶¶ 3, 6 (emphasis added).) At this juncture, no one has determined: (1) that any options were backdated; (2) that, even if options were backdated, they would have materially affected the RSA financial statements in any period; and (3) that a restatement of any Company financial statements is necessary. RSA has therefore yet to suffer any detriment.

Finally, the Complaint never alleges that the options grants were unjustified. Because (1) "the judgment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be *conclusive*," DEL. CODE ANN., tit. 8, § 157(b) (2006) (emphasis added) and (2) Plaintiff has not alleged fraud in the issuance of the stock options, the consideration the company received in exchange for the grants must be deemed sufficient (and therefore justified). *Cf. Leung*, 2000 WL 1478538, at *5 (dismissing under Rule 23.1 and 12(b)(6) because plaintiff had not alleged fraud in issuance of stock to insiders, even though allegation was that directors authorized issuance at price that was deliberately set below market value).

**C.** **Plaintiff's Claim for Damages is Premature, Speculative, and Defectively Conclusory.**

Plaintiff claims money damages on the basis of her speculation that RSA may be held liable in unresolved regulatory actions and private civil litigation for backdating and misaccounting for its options grants. (*See* Compl. ¶¶ 66, 76; Prayer for Relief, ¶ A.) Because the Company has not yet suffered any damage, however, Plaintiff's claim is premature and should be dismissed. *See, e.g., Daisy Sys. Corp. v. Finegold*, No. C 86-20719 (SW), 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988) (dismissing derivative case; allegations of damages based on filing of other lawsuit and of "lost investor confidence" insufficient); *In re United Telecomms., Inc. Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) (granting motion to dismiss in derivative suit where plaintiffs assert damages that were speculative and contingent upon the outcome of a pending class action).

Even if Plaintiff's damages claims were ripe, they are nevertheless not viable:

- Loss of market capitalization or decrease in stock price does not harm the company and therefore cannot be the basis for a remedy in a derivative action, *see, e.g., Carnegie Int'l Corp. v. Grant Thornton, LLP*, No. 24-C-00-002639, 2005 WL 851064, at *7 (Md. Cir. Ct. Apr. 6, 2005) (rejecting argument that loss of market capitalization constitutes harm to company rather than to its shareholders); *Dollens v. Zionts*, No. 01 C02826, 2002 WL 1632261, at *9 (N.D. Ill. July 22, 2002) (claims for damage based on "loss of good will" conclusory and insufficient);

- Injuries to "reputation, business and good will" are compensable only when the complaint alleges *how* and *in what amount* the corporation was harmed, which Plaintiff did not plead in this case. *See, e.g., In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 512, 517 (E.D.N.Y. 1991) (rejecting as "boilerplate" allegation that defendants had "undermined [defendant's]

- 25 -

credibility in the securities market and . . . jeopardized the continued public acceptance and marketability of its stock to the injury of the Company" and holding that "Defendants are entitled to know more specifically what damages are being claimed, as well as the extent of those damages"); *In re United Telecomms.*, 1993 WL 100202, at *2-3 (dismissing case and rejecting as "conclusory" allegation that defendant was "harmed by damage to its credibility and ability to conduct business"); *Taddy v. Singh*, No. 1:04cv1051, slip op. at *24 (E.D. Va. Dec. 8, 2004) (dismissing "vague allegation of loss of reputation" and allegations of lost market capitalization from a decrease in stock price as "insufficient") (Dube Aff., Ex. 5); and

- Because the Options Defendants were not unjustly enriched (*see supra* at section III.B.4), they cannot be ordered to disgorge anything.

Plaintiff has therefore pled no viable theory of monetary damages.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court

dismiss the Complaint, in its entirety, with prejudice.

*Harry Tashjian IV /kef (#4395)*
Gregory P. Williams (#2168)
williams@RLF.com
Harry Tashjian, IV (#4609)
Of Counsel:                                      tashjian@RLF.com
                                                 Richards, Layton & Finger
Jeffrey B. Rudman                                One Rodney Square
Michael R. Dube                                  P.O. Box 551
Wilmer Cutler Pickering Hale and Dorr LLP        Wilmington, DE 19899
60 State Street                                  (302) 658-7700
Boston, MA 02109                                 Counsel for Defendants
(617) 526-6000

Christopher Davies
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
 (202) 663-6000


 Dated:  July 17, 2006

- 27 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 17, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Pamela Tikellis, Esq.
> Chimicles & Tikellis LLP
> P.O. Box 1035
> One Rodney Square
> Wilmington, DE 19899

> *Kelly E. Farnan*
> Kelly E. Farnan (#4395)
> Farnan@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899
> (302) 651-7700